ESTHER ZERDEN GREENE, Plaintiff v. EDWARD IRVING GREENE, Defendant
— AND —
EDWARD I. GREENE, Petitioner v. ESTHER Z. GREENE, Respondent v. MARVIN S. ZERDEN and wife, ELAINE S. ZERDEN, Intervenors

No. 7218DC238

(Filed 2 August 1972)

1. Divorce and Alimony § 16— alimony — defense of adultery

Alimony is not payable when an issue of adultery pleaded in bar thereto is found against the spouse seeking alimony. G.S. 50-16.6.

2. Divorce and Alimony § 14; Evidence § 12— action for alimony — cross-examination as to adultery

In an action for alimony without divorce, the trial court did not err in striking admissions by plaintiff on cross-examination, over objection of her counsel, that she committed adultery during the marriage, since neither the husband nor the wife is a competent witness in any action *inter se* to give evidence for or against the other in any action or proceeding in consequence of adultery, or in any action or proceeding for divorce on account of adultery, and may not be compelled to give such evidence. G.S. 8-56; G.S. 50-10.

3. Divorce and Alimony § 4.5— defense of connivance

Connivance in the law of divorce is the plaintiff's consent, express or implied, to the misconduct alleged as a ground for divorce and is based on the doctrine of unclean hands.

4. Divorce and Alimony § 4.5— sexual misconduct — connivance as defense

Connivance is a defense not only to a plea of adultery but also to other charges of sexual misconduct, including allegations of unnatural sex acts.

5. Divorce and Alimony § 4.5—evidence of connivance

The evidence was sufficient to support the court's finding that defendant husband was guilty of connivance in the sexual misconduct of plaintiff wife where it tended to show that when efforts of a detective failed to uncover any misconduct on plaintiff's part, defendant and the detective agreed to procure plaintiff's misconduct by employing, at substantial financial cost to defendant, immoral persons to induce plaintiff to commit acts which could be used as evidence against her, and that they were successful in this endeavor.

6. Evidence § 14— privileged communications with physician

The trial judge was exercising his discretion in refusing to find that privileged testimony sought to be elicited from a psychiatrist was necessary to a proper administration of justice, and it was not necessary that he assign a reason therefor. G.S. 8-53.

7. **Witnesses § 6—exclusion of tape recording—absence of prejudice**

In an action for alimony without divorce, defendant was not prejudiced by the trial court's exclusion of tape recordings offered by defendant for the purpose of impeaching a defense witness who furnished no evidence at trial bearing on any fact thereafter found by the court.

8. **Appeal and Error § 57—absence of evidence—conclusiveness of finding**

When the evidence on which the court based a finding of fact is not in the record, the finding is conclusive on appeal.

Judge VAUGHN dissents.

APPEAL by defendant from *Washington, District Judge,* 16 September 1971 Session of District Court held in GUILFORD County.

This appeal is from an order awarding plaintiff permanent alimony without divorce in the sum of $100,000.00, payable in annual installments of $10,000.00 until paid. The question of the custody of the minor children born of the marriage was raised in a habeas corpus proceeding. *(Edward I. Greene v. Esther Z. Greene v. Marvin S. Zerden and wife, Elaine S. Zerden.)* The cases were consolidated for hearing and heard by the court without a jury, the parties having waived a jury trial on the alimony issues. Separate orders were entered in each case. Only the order awarding alimony was appealed.

*Smith, Moore, Smith, Schell & Hunter by Jack W. Floyd and William P. Aycock II for plaintiff appellee.*

*Jordan, Wright, Nichols, Caffrey & Hill by Luke Wright and Edward L. Murrelle for defendant appellant.*

GRAHAM, Judge.

Defendant's first assignment of error is to the court's refusal to dismiss plaintiff's claim pursuant to G.S. 1A-1, Rule 41 (b).

The record of more than five hundred pages, plus numerous exhibits, is replete with sordid accounts of marital misconduct on the part of both parties. The court made extensive findings of fact, concluded that defendant was guilty of abandonment and that plaintiff's misconduct was in some instances condoned by defendant and that in other instances it resulted from defendant's connivance.

The evidence tends to show that the parties were married in August of 1952 and lived together until 26 October 1970 at which time defendant left the plaintiff. It is undisputed that plaintiff is a dependent spouse and defendant is a supporting spouse within the meaning of G.S. 50-16.1. It is also undisputed that defendant is a man of considerable financial means. No question is raised with respect to the amount of the alimony awarded.

[1] Defendant's contention that the action should have been dismissed is based upon admissions by plaintiff on cross-examination, over objection by her counsel, that she committed adultery during the marriage. Alimony is not payable when an issue of adultery pleaded in bar thereto is found against the spouse seeking alimony. G.S. 50-16.6. The court admitted plaintiff's admissions of adultery for consideration on the question of custody but ordered them stricken in the alimony action. In addition, the court found that even if this testimony were admissible, the acts admitted by plaintiff were condoned by her husband and therefore do not bar plaintiff's alimony claim.

[2] We hold that the testimony was properly stricken. "Construing G.S. 8-56 and G.S. 50-10 together, . . . neither the husband nor the wife is *a competent witness* in any action *inter se* to give evidence for or against the other in any action or proceeding in consequence of adultery, or in any action or proceeding for divorce on account of adultery, *and may not be compelled* to give such evidence." *Wright v. Wright,* 281 N.C. 159, 167, 188 S.E. 2d 317, 322. See also *Hicks v. Hicks,* 275 N.C. 370, 167 S.E. 2d 761.

[4] Defendant next contends that the court erred in sustaining plaintiff's plea of connivance. He argues that connivance is a defense only to a plea of adultery and that the court here improperly extended the defense to include another act of sexual misconduct.

The court found that defendant employed agents to "induce, persuade and coerce Esther Zerden Greene into participating in illicit sexual activities" and concluded that in doing so defendant thereby "actively connived at and corruptly procured those events."

[3] "Connivance in the law of divorce is the plaintiff's consent, express or implied, to the misconduct alleged as a ground for

Greene v. Greene

divorce." 1 Lee, N. C. Family Law, § 86, p. 328. "Connivance, or procurement, denotes direction, influence, personal exertion, or other action with knowledge and belief that such action would produce certain results and which results are produced." Cohen, Divorce and Alimony in North Carolina, § 59. IV, p. 98. "The basis of the defense of connivance is the maxim 'volenti non fit injuria,' or that one is not legally injured if he has consented to the act complained of or was willing that it should occur. It is also said that the basis of the defense of connivance is the doctrine of unclean hands." 24 Am. Jur. 2d, Divorce and Separation, § 193, p. 352.

The evidence tends to show that a detective employed by defendant paid numerous persons to go by plaintiff's house from time to time in an attempt to engage plaintiff in immoral conduct. The detective reported these activities to defendant. The detective testified: "After I couldn't get any pictures with a man, he [defendant] probably told me to try a woman. With regard to whether that is probably right or whether I know that is right, well I am sure that is the gist of what he said. Yes, it is not necessary to say probably. I know that is the gist of what he said." Following these instructions, the detective, accompanied by a girl whom he suspected of unnatural sex tendencies, went to plaintiff's home on the pretext that the detective and the girl were getting married and were interested in buying the home. The detective told defendant that he was sending the girl back to the house "to see what she could do." Defendant agreed to reimburse the detective for the substantial expenses he would incur in employing the girl for this purpose. Thereafter the detective hired a second girl whom he suspected of tending toward a "woman to woman relationship." The two girls were to visit plaintiff and go places with her. The detective stated, "I told them that they were to do anything that Mrs. Greene wanted to do. I told them that I wanted to take pictures. They knew that. They knew that I didn't just want to take pictures going in and out of the grocery store. I did tell them the nature of the pictures that I wanted them to take."

Eventually the girls arranged for Mrs. Greene to go with them and one Wade Carson on a picnic. The detective had employed Carson, promising him $75.00 in payment and representing that "there was a possibility that he could have intercourse with the women." At the picnic, Mrs. Greene, who was not accustomed to drinking, consumed a large quantity of alco-

holic beverages which were brought there by Carson. Mrs. Greene admitted that during the day she engaged in reprehensible conduct including using a "vibrator" on one of the girls. It is with respect to this act that defendant says plaintiff's plea of connivance is inapplicable.

[4]   It is true that connivance is most frequently asserted as a defense to a charge of adultery in divorce actions. However, we know of no reason why the plea should not also be available as a defense to other charges of sexual misconduct. The plea is founded upon equitable principles. As stated in the case of *Fonger v. Fonger,* 160 Md. 610, 623, 154 A. 443, 448:

> "[T]he foundation of equitable jurisdiction is justice, and one of its greatest landmarks is that 'he who does iniquity shall not have equity,' and connivance is iniquity. . . . 'Nothing can be more basely infamous or more degrading' . . . and it is certain that a court of equity will not lend its aid to one who has knowingly connived at his wife's adultery . . . since it regards him as unclean."

We agree with plaintiff's argument that, "[t]o say that the plea of connivance is a defense to allegations of adultery but not to allegations of abnormal sex acts, is to call the corrupt procurement of bad conduct inequitable while labeling the procurement of worse conduct acceptable."

[5]   Defendant also challenges the sufficiency of the evidence to support the court's findings and conclusions with respect to connivance. Considering the evidence in the light most favorable to plaintiff, it is sufficient to show the following: Defendant has had an extramarital affair with his secretary, Joyce Marr, for a number of years. Nude photographs of Mrs. Marr were found in defendant's desk drawer. Mrs. Marr, who has played more than a passing role in obtaining evidence for use against plaintiff, was divorced from her husband in October of 1969. That same month defendant engaged a detective to obtain evidence that could be used against his wife. When exhaustive efforts of the detective failed to uncover any misconduct on plaintiff's part, defendant and the detective agreed to procure plaintiff's misconduct by employing, at substantial financial cost to defendant, totally immoral persons to induce plaintiff to commit acts which could be used as evidence against her. In this endeavor they were successful.

We find the evidence plenary to support the judge's findings. A statement in the case of *Wotherspoon v. Wotherspoon*, 108 Pa. S. 309, 311, 164 A. 842, 843, seems applicable to the facts of this case.

> " 'Text writers and our courts agree, that a man who suspects a wife may take means to procure proof, but he must not lead her into a fresh wrong because he feels she is guilty of an old one. He may leave open the opportunities which he finds, but he must not lay new temptations in her way; it is one thing to permit, and another to invite; and one who takes advantage of an agent's unauthorized fraud is answerable for the fraud; when a husband intentionally lays a lure for his wife, either acting in person or through an agent, his will necessarily concurs in her act.' "

Defendant next assigns as error the court's sustaining of plaintiff's objection to the testimony of Dr. Carr, a psychiatrist. This assignment of error is overruled. Dr. Carr consulted briefly with plaintiff in 1959. He made no notes at the time of the consultation and admitted that since that time he has seen literally thousands of patients and consulted on literally thousands of cases in which he did not see the patients.

[6] The evidence defendant sought to elicit from the psychiatrist was privileged, unless the trial court found that it was necessary to a proper administration of justice. G.S. 8-53. The court did not so find. In refusing to so find, the trial judge was exercising his discretion and it was not necessary that he assign a reason therefor. "When no reason is assigned by the court for a ruling which may be made as a matter of discretion for the promotion of justice or because of a mistaken view of the law, the presumption on appeal is that the court made the ruling in the exercise of its discretion." *Brittain v. Aviation, Inc.*, 254 N.C. 697, 703, 120 S.E. 2d 72, 76.

Defendant next assigns as error the refusal of the court to allow in evidence tape recordings made by defendant of conversations between him and Christine Carter, the parties' former maid. Mrs. Carter was called by defendant as a witness. She acknowledged that in 1967, and perhaps in 1968 and 1969, she had conversations with defendant about his wife and that defendant tape recorded the conversations. She contended, however, that defendant told her what to say during the

conversations. Defendant offered three tape recordings in evidence for the purpose of impeaching Mrs. Carter's testimony. Plaintiff objected and the court sustained the objection after expressly considering testimony given under oath by defendant and other witnesses during prior proceedings in this cause. The following previous testimony was considered by the court:

Testimony of defendant given on his deposition on 2 December 1970:

"Q. I believe you were present this morning, were you not, sir, when Christine Carter testified?

A. Yeah; yeah.

Q. You heard her testimony?

A. Yeah.

Q. Was that testimony truthful?

A. As far as I know—I mean I—

Q. As far as you know it was?

A. Yes.

Q. Did you hear the question that I put to her concerning certain recordings?

A. Uh-huh.

Q. As to whether or not she'd ever had a conversation recorded by you?

A. Uh-huh.

Q. And I believe she said 'No,' that she had not; is that your recollection?

A. Yeah.

Q. Was that a truthful answer?

A. So far as I know.

Q. Well, if you had made a recording of a conversation with Christine Carter you would know it, would you not, Mr. Greene?

A. Oh, yeah.

Greene v. Greene

Q. Had you made such a recording?

A. No.

Q. Do you know if anyone else has made such a recording?

A. I don't know.

Q. If there has been such a recording made, you haven't heard it; would that be an accurate statement?

A. That's right.

Q. Have you ever heard Christine Carter's voice on a recording?

A. No.

Q. Did you hear Christine Carter's answer to the question that she had never talked with you about Mrs. Greene?

A. That's right.

Q. I believe she answered no; is that your recollection?

A. You asked her what?

Q. Whether she had ever talked with you about Mrs. Greene?

A. Yeah; and she said no.

Q. She said no?

A. Okay; that's right. That's right."

Testimony given by Mrs. Carter during hearing on a motion in this cause on 9 December 1970:

"Q. Did you know that Mr. Greene recorded any conversations that he had with you?

A. Yes, he did, but I didn't know it.

Q. You didn't know it was being recorded?

A. No.

*      *      *

Q. Now did you tell Mr. Greene things about his wife that he recorded on tape, that you later learned that he had recorded on tape?

A. Yes, and all of those I told him was lies, because he put them in my mouth. They was all lies; they was not true.

Q. In other words, Mr. Greene sort of picked out of you and put whatever words he wanted in your mouth; is that right?

A. Yes."

Testimony given by Joyce Marr, defendant's secretary, on her deposition 2 December 1970:

"Q. Did you ever have any conversations with Christine Carter about either Mr. or Mrs. Greene?

A. No, sir."

(Mrs. Marr's testimony at trial tended to show that she actually participated in the conversations with Mrs. Carter which were recorded by defendant. Mrs. Marr testified at length concerning what was said in the conversations.)

Defendant contends that irrespective of his denial under oath that the tape recordings existed, it was error for the court to refuse to allow him to use them in evidence for impeachment purposes. In this connection it should be noted that after defendant's false testimony concerning the tape recordings, his counsel immediately and candidly admitted to plaintiff's counsel that he knew there were two tape recordings. These two recordings were later produced in response to a motion to produce filed by plaintiff. The third tape recording was not produced until the trial.

[7] Plaintiff contends that since defendant knowingly and falsely denied the existence of the tape recordings during plaintiff's discovery proceedings, he should be estopped from using the recordings at trial. We find this argument quite persuasive. However, aside from this, we think defendant has failed to show that he was prejudiced by the exclusion of the recordings. They were competent, if at all, only for impeachment purposes. The primary purpose of impeachment is to reduce or discount the credibility of a witness for the purpose of inducing the trier of facts to give less weight to the witness's testimony in arriving at the ultimate facts in the case. Stansbury, N. C. Evidence 2d, § 38, p. 76. Mrs. Carter furnished no evidence at

Beasley v. Food Fair

trial bearing on any fact thereafter found by the court. Consequently, whether she was a credible witness is of no significance.

Defendant's final contention is that the court erred in finding that defendant had been deliberately evasive in responding to discovery directed to questions of his earning capacity and financial condition. This contention is without merit.

[8]   Pursuant to G.S. 1A-1, Rule 45, defendant was ordered to produce at the trial appraisals of real estate which he owned, appraisals of his leasing agreements and copies of the last three tax returns for corporations in which he owned 50% or more of the outstanding stock. He failed to produce any of these documents. His explanation as to why he did not comply with this order was not transcribed and is not a part of the record. The court found that it was because he made no effort to comply. Since the evidence on which the court based this finding is not in the record, the finding is conclusive on appeal. *Bundy v. Ayscue*, 5 N.C. App. 581, 169 S.E. 2d 87, *appeal dismissed* 276 N.C. 81, 171 S.E. 2d 1.

Affirmed.

Judge MORRIS concurs.

Judge VAUGHN dissents.