INTERNATIONAL LONGSHORE-
MEN'S ASSOCIATION,
AFL–CIO, Appellee,

v.

NORTH CAROLINA PORTS
AUTHORITY, Appellant,

James W. Davis et al., Defendants.

No. 74–1344.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1974.

Decided Feb. 26, 1975.

Edwin M. Speas, Jr., Asst. Atty. Gen. of N. C. (Robert Morgan, Atty. Gen. of N. C., on brief), for appellant.

Herzl S. Eisenstadt, New York City (Thomas W. Gleason, New York City, on brief), for appellee.

Before WINTER, CRAVEN and RUSSELL, Circuit Judges.

PER CURIAM:

For more than six years the North Carolina Ports Authority has refused to bargain with the International Longshoremen's Association (ILA) as the certified representative of certain Ports Authority employees under the Railway Labor Act, 45 U.S.C. §§ 151–188. There has been labor unrest, and disruption of work, including at least one instance of closing the port.[1] On a previous appeal we held the Ports Authority was a "carrier" within the meaning of the Act, reversing a dismissal of the complaint by the district court, 332 F.Supp. 95, and remanding. 463 F.2d 1 (4th Cir. 1972). In a carefully reasoned opinion the district court has now rejected the Authority's remaining defenses and held it must recognize and bargain with the union.

370 F.Supp. 33 (E.D.N.C.1974). We affirm.

On the issues of whether the employees of the Authority represented by the ILA are "employees" within the meaning of the RLA, and whether due process was observed at the proceedings before the National Mediation Board prior to the certification election, we adopt the opinion below.[2] *Id.* at 39–41. We are also in complete agreement with Chief Judge Butler's reasoning in denying the Authority's defense of immunity from suit under the eleventh amendment, *id.* at 36–38, but the question is sufficiently sensitive to warrant brief discussion.

It is now settled that a state of the union is protected against suits for damages by its own citizens by the eleventh amendment, and not simply by the more vulnerable doctrine of sovereign immunity. *See* Employees v. Missouri Public Health Dept., 411 U.S. 279, 309, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (Brennan, J., dissenting). Thus the suit should have been dismissed unless its maintenance could be said to lie within the doctrine of Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), or the state has effectively consented to be sued.[3]

We fully agree with the district judge that when a state leaves its traditional governmental activity and enters upon a proprietary enterprise that is ". . . subject to congressional regulation, it subjects itself to that regulation as fully as if it were a private person or corporation." Parden v. Terminal Ry., 377 U.S. 184, 196, 84 S.Ct. 1207, 1215, 12 L.Ed.2d 233 (1964). The district court noted that this case is controlled

---

1. See preliminary injunction to stop picketing and open the port, Wilmington Shipping Co. v. International Longshoremen's Association, Local 1426, Civil No. 1667 (E.D.N.C. Sept. 21, 1973).

2. Chief Judge Butler also rejected the Authority's claim that North Carolina General Statutes § 95–98, which declares contracts between any state instrumentality and a labor union to be against public policy and void,

precluded the relief sought by the ILA. *See* 370 F.Supp. at 40–41. The Authority does not assert this claim on appeal.

3. Because we agree with the alternate ground of decision adopted by the district court, we need not consider whether a suit against a state agency as opposed to the state itself can be brought within the Ex Parte Young fiction, but we note that the suit is for an injunction and not for damages.

 

by *Parden* and correctly distinguished Employees v. Missouri Public Health Dept., 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

We adopt the district court opinion as our own. 370 F.Supp. 33 (E.D.N.C.1974).

Affirmed.