FRED GUTHRIE, JR. AND KATHY GUTHRIE v. NORTH CAROLINA STATE PORTS AUTHORITY

No. 97PA82

(Filed 8 February 1983)

**1. State § 4— State Ports Authority—agency of the State—sovereign immunity**

The State Ports Authority is an agency of the State and, as such, is entitled to claim the defense of sovereign immunity. G.S. 143B-453; G.S. 143B-454.

**2. State § 4— State Ports Authority—sovereign immunity—no waiver by engaging in proprietary enterprise**

The State has absolute immunity in tort actions without regard to whether it is performing a governmental or proprietary function except insofar as it has consented to be sued or otherwise expressly waived its immunity. Therefore, the State Ports Authority, as an agency of the State, may not implicitly waive its defense of sovereign immunity by engaging in a proprietary enterprise and is entitled to claim the defense of sovereign immunity absent express statutory waiver.

**3. State § 4— State Ports Authority—waiver of immunity for tort claims within ambit of Tort Claims Act**

As an agency of the State of North Carolina, the State Ports Authority is clothed with immunity from actions based on its alleged negligence from whatever source except to the extent that such immunity has been waived, and the State, by virtue of the enactment of the State Tort Claims Act, has specifically and explicitly waived that immunity as to tort claims falling within the ambit of that Act without regard to the nature of the function out of which they arise.

**4. State § 5— tort action against State Ports Authority—applicability of Tort Claims Act**

The State Tort Claims Act, G.S. 143-291 *et seq.*, and G.S. 143-454(1), which vests the State Ports Authority with authority to sue or be sued, when read together, evidence a legislative intent that the Ports Authority be authorized to sue as plaintiff in its own name in the courts of the State but contemplate that all tort actions against the Ports Authority for money damages will be pursued under the State Tort Claims Act. Therefore, the superior court had no jurisdiction over plaintiffs' tort claims against the State Ports Authority since such claims came within the exclusive and original jurisdiction of the Industrial Commission.

Justice FRYE did not participate in the consideration or decision of this case.

ON discretionary review of a decision by the Court of Appeals reversing a judgment of *Brown, J.*, filed 17 March 1981 in the Superior Court, CARTERET County. Plaintiffs instituted this civil action on 7 November 1980, seeking to recover damages for injuries sustained by the male plaintiff, a longshoreman, who at the time of his injury was operating a forklift in defendant's warehouse at its port facility in Morehead City, North Carolina. The female plaintiff, wife of the male plaintiff, joined in the complaint a second cause of action seeking damages for loss of consortium. Defendant filed motions to dismiss plaintiffs' action for lack of jurisdiction over the subject matter and over the person pursuant to Rules 12(b)(1) and (2) of the North Carolina Rules of Civil Procedure and for failure of the complaint to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Defendant made a written request that the court make findings of fact and conclusions of law upon which the court's rulings on the motions to dismiss might be based. The court, after a hearing in open court, denied all of defendant's motions to dismiss. Defendant excepted and appealed to the Court of Appeals. The Court of Appeals, in an opinion by *Hill, J.*, concurred in as to result only by *Vaughn* and *Webb, JJ.*, reversed the trial court's denial of defendant's motion to dismiss. 56 N.C. App. 68, 286 S.E. 2d 823 (1982). Plaintiffs petitioned this Court for discretionary review which we allowed on 4 May 1982.

*Bennett, McConkey & Thompson, P.A., by Thomas S. Bennett and James W. Thompson, III, Attorneys for plaintiffs-appellants.*

*Stith and Stith, by F. Blackwell Stith, Attorneys for defendant-appellee.*

MEYER, Justice.

The sole question presented for our review is whether the trial court properly assumed jurisdiction to adjudicate plaintiffs' claims,[1] or whether exclusive original jurisdiction lies with the Industrial Commission under the North Carolina Tort Claims Act, N.C. Gen. Stat. §§ 143-291 to -300.1 (1978 and Supp. 1981). In order to resolve this issue, we must make three determinations:

1. Is the State Ports Authority an "agency of the State" and thus entitled to claim the defense of sovereign immunity? We answer in the affirmative.

2. Has the State Ports Authority implicitly waived its defense of sovereign immunity with respect to plaintiffs' claims? We find that it has not.

3. Does the explicit limited waiver of sovereign immunity by the State for the negligence of its employees and agents as set forth in the Tort Claims Act apply to plaintiffs' claims? We answer in the affirmative.

The male plaintiff-appellant's complaint, in pertinent part, alleges that on 27 March 1980 at approximately 9:00 a.m. he was employed by Lavino Shipping Company as a longshoreman assigned to work as a forklift operator to move stacked bundles of lumber from a warehouse owned and operated by the defendant. The warehouse was located on the defendant's premises at its port facility in Morehead City, North Carolina. The stacked bundles of lumber were approximately four feet deep, four feet high, and sixteen feet long, and weighed approximately seven thousand pounds each. They were stacked five high in defendant's warehouse by defendant's employees in accordance with instruc-

---

1. We find it unnecessary to determine whether the defense of sovereign immunity raises a question of personal or subject matter jurisdiction. *See Teachy v. Coble Dairies, Inc.,* 306 N.C. 324, 293 S.E. 2d 182 (1982).

tions given by defendant's management. The plaintiff was in the process of moving the bundles of lumber from the warehouse site to dockside for loading on a vessel moored at defendant's facility. As he attempted to move one of the bundles of lumber, a stack of bundles approximately twenty feet high, located directly behind the bundle plaintiff was attempting to move, fell over and crashed down upon the forklift which the plaintiff was operating. As a result, he sustained severe, crippling and permanent injuries including a fractured back. Plaintiff is now a paraplegic and confined to a wheelchair.

The plaintiff contends that the injuries he sustained were a result of the negligence of the defendant, its agents and employees and seeks damages in the amount of several million dollars as set forth with particularity in the complaint. As a part of the same complaint, the plaintiff's wife joined in the action and seeks damages for loss of consortium in the amount of one million dollars.

The defendant-appellee, in apt time, filed motions to dismiss for lack of jurisdiction and for failure of the complaint to state a claim upon which relief could be granted. Upon the trial court's denial of defendant's motions to dismiss, appeal was taken to the Court of Appeals. Recognizing that while ordinarily there is no right of appeal from the denial of a motion to dismiss, that court nevertheless elected to hear the case on the merits because of the importance of the question presented. The Court of Appeals considered the following language from the State Tort Claims Act: "The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the Department of Transportation, and all other departments, institutions and *agencies of the State.*" G.S. § 143-291 (emphasis added). Based on the court's comparison of the organization and powers of the State Board of Education and the Department of Transportation with those of the defendant, it determined that the three were *ejusdem generis.* Therefore, "[e]ven though its act of creation has the effect of rendering defendant 'a substantially independent and autonomous public or quasi-municipal corporation,' . . . neither this description nor defendant's 'proprietary function' erase[s] its substantial ties to the State of North Carolina . . . ." 56 N.C. App. at 74, 286 S.E. 2d at 827. The order of the trial judge deny-

ing plaintiffs' motions to dismiss was reversed and the plaintiffs' complaint was dismissed upon the court's finding that the defendant was an agency of the State of North Carolina and as such plaintiffs' right of recovery was restricted entirely to the State Tort Claims Act, with exclusive original jurisdiction vested in the North Carolina Industrial Commission. Plaintiff-appellants' petition for discretionary review was allowed by this Court on 5 May 1982.

The plaintiff-appellants contend that the Ports Authority is in fact, and by legislative enactment, a substantially independent and autonomous public or quasi-municipal corporation engaging in a proprietary function to the extent that it cannot avail itself of the defense of the State's sovereign immunity in a tort action for negligence. Thus, argue plaintiff-appellants, their remedy cannot be limited to the State Tort Claims Act.

The defendant-appellee Ports Authority contends that this Court should affirm the decision of the Court of Appeals because the Ports Authority is indeed an agency and instrumentality of the State created and empowered to accomplish a public purpose, is engaged in a governmental function, and is clothed with sovereign immunity to the extent it has not waived it under the provisions of the State Tort Claims Act. Thus, argues defendant, the Superior Court has no jurisdiction, and plaintiffs' exclusive remedy is a claim pursuant to the Tort Claims Act.

In substance, Judge Brown's sixteen findings of fact are premised on the theory that there is a distinction between the "governmental" and "proprietary" functions as engaged in by the State Ports Authority and point unmistakably to the conclusion that, because it is a "proprietary" enterprise, the Ports Authority has implicitly waived its defense of sovereign immunity.

In his "Order Denying Defendant's Motion to Dismiss," filed 17 March 1981, Judge Brown recited that, on the Rule 12(b)(1) and (2) motions *only,* he had allowed into evidence some thirty-four of plaintiffs' exhibits, and the affidavit of a witness for the plaintiffs with an exhibit attached, all over the objection of defendant. The defendant Ports Authority put on no evidence of any kind. Judge Brown further recited that on his consideration of defendant's Rule 12(b)(6) motion, he heard no evidence and considered only the pleadings. The parties have chosen to stipulate to the content of a

record on appeal which does not include any of plaintiffs' thirty-four exhibits or the affidavit, although it is obvious from the nature and content of Judge Brown's lengthy findings of facts that he relied heavily on those items of evidence. Fortunately, we need not consider whether the findings of fact are supported by the evidence—we assume *arguendo* that they are. *Greene v. Greene*, 15 N.C. App. 314, 190 S.E. 2d 258 (1972); *Bundy v. Ayscue*, 5 N.C. App. 581, 169 S.E. 2d 87, *appeal dismissed* 276 N.C. 81, 171 S.E. 2d 1 (1969). Here, we need only concern ourselves with whether the findings made support the conclusions of law that (1) the court had jurisdiction of the claim; (2) the State Ports Authority is not entitled to claim the defense of sovereign immunity; and (3) the State Tort Claims Act is not applicable to plaintiffs' claims. We find that Judge Brown's findings do not support these conclusions.

Our determination that the findings do not support the conclusions is based upon our examination of three issues raised by those conclusions: (1) whether the Ports Authority is an agency of the State entitled to claim the defense of sovereign immunity; (2) whether the Ports Authority may implicitly waive its defense of sovereign immunity by engaging in a "proprietary" enterprise; and (3) whether the explicit limited waiver of immunity of the State Tort Claims Act applies to plaintiffs' claims. We will address each of these questions *seriatim.*

1.

[1] We first address the question of whether the Ports Authority is an agency of the State entitled to claim the defense of sovereign immunity.

It cannot be disputed that our Legislature has the power to create a State Ports Authority and to maintain it as an agency of the State, under the control of the State. It is clear from the language of the act creating the Authority that the Legislature intended that the State itself, through the instrumentality of the Ports Authority, conduct the desired activities:

> *Through the Authority* hereinbefore created, *the State of North Carolina may* engage in [numerous enumerated activities hereinafter set forth specifically]. *Said Authority is created as an instrumentality of the State of North Carolina*
> . . . .

N.C. Gen. Stat. § 143B-453 (Supp. 1981) (emphasis added).

Such a legislative declaration, although not conclusive upon the court, carries great weight. *See Stanley, Edwards, Henderson v. Dept. Conservation & Development,* 284 N.C. 15, 199 S.E. 2d 641 (1973); *Foster v. Medical Care Comm.,* 283 N.C. 110, 195 S.E. 2d 517 (1973); *Mitchell v. Financing Authority,* 273 N.C. 137, 159 S.E. 2d 745 (1968).

The North Carolina State Ports Authority was created in 1945 by an act of the General Assembly. *See* G.S. § 143B-452 *et seq.* It is a division of the Department of Commerce. *See* G.S. § 143B-431(2)(1). The purposes of the Authority are set out in the General Statutes:

Through the Authority hereinbefore created, the State of North Carolina may engage in promoting, developing, constructing, equipping, maintaining and operating the harbors and seaports within the State, or within the jurisdiction of the State, and works of internal improvements incident thereto, including the acquisition or construction, maintenance and operation at such seaports or harbors of watercraft and highways and bridges thereon or essential for the proper operation thereof. Said Authority is created as an instrumentality of the State of North Carolina for the accomplishment of the following general purposes:

(1) To develop and improve the harbors or seaports at Wilmington, Morehead City and Southport, North Carolina, and such other places, including inland ports and facilities, as may be deemed feasible for a more expeditious and efficient handling of waterborne commerce from and to any place or places in the State of North Carolina and other states and foreign countries.

(2) To acquire, construct, equip, maintain, develop and improve the port facilities at said ports and to improve such portions of the waterways thereat as are within the jurisdiction of the federal government.

(3) To foster and stimulate the shipment of freight and commerce through said ports, whether originating within or without the State of North Carolina, in-

cluding the investigation and handling of matters pertaining to all transportation rates and rate structures affecting the same.

. . . .

(7) And in general to do and perform any act or function which may tend or be useful toward the development and improvement of harbors, seaports and inland ports of the State of North Carolina, and to increase the movement of waterborne commerce, foreign and domestic, to, through, and from such harbors and ports.

N.C. Gen. Stat. § 143B-453 (Supp. 1981).

The powers of the Ports Authority are enumerated as follows:

§ 143B-454. *Powers of Authority.* — In order to enable it to carry out the purposes of this Part, the said Authority shall:

(1) Have the powers of a body corporate, including the power to sue and be sued, to make contracts, and to adopt and use a common seal and to alter the same as may be deemed expedient;

(2) Have the authority to make all necessary contracts and arrangements with other port authorities of this and other states for the interchange of business, and for such other purposes as will facilitate and increase the business of the North Carolina State Ports Authority;

(3) Be authorized and empowered to rent, lease, buy, own, acquire, mortgage, otherwise encumber, and dispose of such property, real or personal, as said Authority may deem proper to carry out the purposes and provisions of this Part, all or any of them;

(4) Be authorized and empowered to acquire, construct, maintain, equip and operate any wharves, docks, piers, quays, elevators, compresses, refrigeration storage plants, warehouses and other structures, and

any and all facilities needful for the convenient use of the same in the aid of commerce, including the dredging of approaches thereto, and the construction of belt-line roads and highways and bridges and causeways thereon, and other bridges and causeways necessary or useful in connection therewith, and shipyards, shipping facilities, and transportation facilities incident thereto and useful or convenient for the use thereof, excluding terminal railroads;

(5) The Secretary of Commerce with the approval of the Authority shall appoint such management personnel as he deems necessary to serve at his pleasure. The salaries of these personnel shall be fixed by the Governor with the approval of the Advisory Budget Commission. The Secretary of Commerce or his designee shall appoint, employ, dismiss and, within the limits of available funding, fix the compensation of such other employees as he deems necessary to carry out the purposes of this Part. There shall be an executive committee consisting of the chairman of the Authority and two other members elected annually by the Authority. The executive committee shall be vested with authority to do all acts which are authorized by the bylaws of the Authority. Members of the executive committee shall serve until their successors are elected;

(6) Establish an office for the transaction of its business at such place or places as, in the opinion of the Authority, shall be advisable or necessary in carrying out the purposes of this Part;

(7) Be authorized and empowered to create and operate such agencies and departments as said board may deem necessary or useful for the furtherance of any of the purposes of this Part;

(8) Be authorized and empowered to pay all necessary costs and expenses involved in and incident to the formation and organization of said Authority, and incident to the administration and operation thereof, and to pay all other costs and expenses reasonably

necessary or expedient in carrying out and accomplishing the purposes of this Part;

(9) Be authorized and empowered to apply for and accept loans and grants of money from any federal agency or the State of North Carolina or any political subdivision thereof or from any public or private sources available for any and all of the purposes authorized in this Article, and to expend the same in accordance with the directions and requirements attached thereto, or imposed thereon by any such federal agency, the State of North Carolina, or any political subdivision thereof, or any public or private lender or donor, and to give such evidences of indebtedness as shall be required, provided, however, that no indebtedness of any kind incurred or created by the Authority shall constitute an indebtedness of the State of North Carolina, or any political subdivisions thereof, and no such indebtedness shall involve or be secured by the faith, credit or taxing power of the State of North Carolina, or any political subdivision thereof: Provided, however, at no time may the total outstanding indebtedness of the Authority excluding bond indebtedness exceed a total of five hundred thousand dollars ($500,000) without approval of the Advisory Budget Commission;

(10) Be authorized and empowered to act as agent for the United States of America, or any agency, department, corporation, or instrumentality thereof, in any matter coming within the purposes or powers of the Authority;

(11) Have power to adopt, alter or repeal its own bylaws, rules and regulations governing the manner in which its business may be transacted and in which the power granted to it may be enjoyed, and may provide for the appointment of such committees, and the functions thereof, as the Authority may deem necessary or expedient in facilitating its business;

> (12) Be authorized and empowered to do any and all other acts and things in this Part authorized or required to be done, whether or not included in the general powers in this section mentioned; and

> (13) Be authorized and empowered to do any and all things necessary to accomplish the purposes of this Part: Provided, that said Authority shall not engage in shipbuilding.

> The property of the Authority shall not be subject to any taxes or assessments thereon.

N.C. Gen. Stat. § 143B-454 (1978 and Supp. 1981).

Our examination of the act of the General Assembly creating the Ports Authority and enumerating its purposes and powers leaves us with no doubt that the Authority was created and exists as a true agency and instrumentality of the State. Indeed, this Court has held that the State Ports Authority is an agency of the State created and empowered to accomplish a public purpose.

> The North Carolina State Ports Authority, defendant in this action, was created by Article 22 of Chapter 143 of the General Statutes, and is an instrumentality and agency of the State, created and empowered to accomplish a public purpose. G.S. 143-217; *Webb v. Port Commission*, 205 N.C. 663, 172 S.E. 377 (1934).

*Harrison Associates v. State Ports Authority*, 280 N.C. 251, 258, 185 S.E. 2d 793, 797, reh. den. 281 N.C. 317 (1972). We hold that the State Ports Authority is an "agency of the State," and, as such, is entitled to claim the defense of sovereign immunity.

2.

Having determined that the Ports Authority is an agency of the State and therefore is entitled to claim the defense of sovereign immunity, there still remains the question of whether the Authority has implicitly waived its defense.

The plaintiff-appellants devote a substantial portion of their brief before this Court to a discussion of the difference between proprietary and governmental functions and their contention that if an activity is proprietary in nature, the State has waived its im-

munity and the State Tort Claims Act does not apply. The cases cited by plaintiffs for this proposition for the most part deal with claims arising out of proprietary functions on the city or county level of government. We do not find these cases applicable to the questions presented on this appeal. It is of course elementary with us that in determining the liability of a municipality for tort, one of the primary questions usually presented is whether the incident causing the plaintiffs' injury or damage arose out of a governmental or proprietary function of the municipality—the general rule being that liability may be found if the function was proprietary but not if it was governmental. *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897, *reh. den.* 281 N.C. 516 (1972); *Steelman v. City of New Bern*, 279 N.C. 589, 184 S.E. 2d 239 (1971); *Moffitt v. Ashville*, 103 N.C. 237, 9 S.E. 695 (1889). While a number of State jurisdictions recognize the distinction as being applicable in an action against the State,[2] the law of North Carolina from a very early date has rejected the test of the nature of the operation as governmental or proprietary in determining the liability of the State for tort.

In our early case of *Clodfelter v. State* decided in 1882, a claim for personal injury was made against the State and the claimant argued that he was not bound by the State's sovereign immunity because his injuries arose out of the operation of a "private enterprise," *i.e.* proprietary function, by the State. There, this Court in rejecting that contention, said:

> The only question then presented is, whether the State, in administering the functions of government through its appointed agents and officers, is legally liable to a claim in compensatory damages for an injury resulting from their misconduct or negligence.

> That the doctrine of *respondeat superior* applicable to the relations of principal and agent created between other persons, does not prevail against the sovereign in the necessary employment of public agents, is too well settled upon authority and practice to admit of controversy.

2. *See* Annot., "State's Immunity From Tort Liability as Dependent on Governmental or Proprietary Nature of Function," 40 A.L.R. 2d 927 (1955) and A.L.R. 2d Later Case Service.

. . . .

Admitting the general principle, the plaintiff's counsel undertakes to withdraw the present claim from its operation, for that the convict was put to work in constructing a railroad, a private enterprise, and not employed at any public work when the accident occurred, and thus the State has voluntarily assumed the responsibilities of one of its own citizens incurred under like circumstances. We cannot recognize the distinction as affecting the results, nor feel the force of the reasoning by which it is sustained.

86 N.C. 51, 52-53, 41 Am. Rep. 440 (1882).

It has long been established that an action cannot be maintained against the State of North Carolina *or an agency thereof* unless it consents to be sued or upon its waiver of immunity, and that *this immunity is absolute and unqualified. Teer Co. v. Highway Commission,* 265 N.C. 1, 143 S.E. 2d 247 (1965); *Insurance Co. v. Gold, Commissioner of Insurance,* 254 N.C. 168, 118 S.E. 2d 792 (1961); *Ferrell v. Highway Commission,* 252 N.C. 830, 115 S.E. 2d 34 (1960); *Williams v. Highway Commission,* 252 N.C. 772, 114 S.E. 2d 782 (1960); *Insurance Co. v. Unemployment Compensation Com.,* 217 N.C. 495, 8 S.E. 2d 619 (1940); *Dredging Co. v. State,* 191 N.C. 243, 131 S.E. 665 (1926).

'An action against a commission or board created by statute as an agency of the State where the interest or rights of the State are directly affected is in fact an action against the State.' *Insurance Co. v. Unemployment Compensation Commission, supra.* The State is immune from suit unless and until it has expressly consented to be sued. *It is for the General Assembly to determine when and under what circumstances the State may be sued.*

*Insurance Co. v. Gold, Commissioner of Insurance,* 254 N.C. 168, 172-73, 118 S.E. 2d 792, 795 (emphasis added). *See Harrison Associates v. State Ports Authority,* 280 N.C. 251, 185 S.E. 2d 793.

[2] The State has absolute immunity in tort actions without regard to whether it is performing a governmental or proprietary function except insofar as it has consented to be sued or otherwise expressly waived its immunity. Claims for tort liability are

allowed only by virtue of the express waiver of the State's immunity. *Turner v. Board of Education,* 250 N.C. 456, 109 S.E. 2d 211 (1959).

"Sovereign immunity is a legal principle which states in its broadest terms that the sovereign will not be subject to any form of judicial action without its express consent." 12 Wake Forest L. Rev. 1082, 1083 (1976). With respect to actions *ex delicto,* we continue to recognize no distinction between "governmental" or "proprietary" functions of the State as sovereign. We hold that the State Ports Authority, as an agency of the State, is entitled to claim the defense of sovereign immunity absent express statutory waiver.

3.

We turn now to the question of whether the explicit limited waiver of sovereign immunity by the State for the negligence of its employees and agents as set forth in the State Tort Claims Act is applicable to plaintiffs' claims.

Traditionally, the State has maintained its sovereign immunity in tort actions. *Steelman v. City of New Bern,* 279 N.C. 589, 184 S.E. 2d 239. However, the Tort Claims Act, as provided in North Carolina General Statute 143-291 *et seq.,* waived the sovereign immunity of the State in those instances in which injury is caused by the negligence of a State employee and the injured person is not guilty of contributory negligence, giving the injured party the same right to sue as any other litigant. *Ivey v. Prison Department,* 252 N.C. 615, 114 S.E. 2d 812 (1960); *Alliance Co. v. State Hospital,* 241 N.C. 329, 85 S.E. 2d 386 (1955); *Lyon & Sons v. Board of Education,* 238 N.C. 24, 76 S.E. 2d 553 (1953). The State may be sued in tort only as authorized in the Tort Claims Act. *Davis v. Highway Commission,* 271 N.C. 405, 156 S.E. 2d 685 (1967).

The State Tort Claims Act provides in pertinent part as follows:

The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State. The Industrial Commission shall deter-

mine whether or not each individual claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina. If the Commission finds that there was such negligence on the part of an officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, which was the proximate cause of the injury and that there was no contributory negligence on the part of the claimant or the person in whose behalf the claim is asserted, the Commission shall determine the amount of damages which the claimant is entitled to be paid, including medical and other expenses, and by appropriate order direct the payment of such damages by the department, institution or agency concerned, but in no event shall the amount of damages awarded exceed the sum of one hundred thousand dollars ($100,000) cumulatively to all claimants on account of injury and damage to any one person.

N.C. Gen. Stat. § 143-291 (Supp. 1981).

Under the Tort Claims Act, jurisdiction is vested in the Industrial Commission to hear claims against the State of North Carolina for personal injuries sustained by any person as a result of the negligence of a State employee while acting within the scope of his employment. *Greene v. Board of Education*, 237 N.C. 336, 75 S.E. 2d 129 (1953).

The State Tort Claims Act authorizes the Industrial Commission to entertain claims arising as a result of a negligent act of any officer, employee, involuntary servant, or agent of the State while acting within the scope of his office, employment, service, agency, or authority under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

The legal limitation on the right to allow a claim under the provisions of [the State Tort Claims Act] is limited to the same category with respect to tort claims against the agency covered as if such agency were a private person and such

private person would be liable under the laws of North Carolina.

*Trust Co. v. Board of Education*, 251 N.C. 603, 609, 111 S.E. 2d 844, 849 (1960).

This Court has previously indicated the type of agency it would consider a "state agency" within the meaning of that term as used in the State Tort Claims Act. In *Turner v. Board of Education*, 250 N.C. 456, 463, 109 S.E. 2d 211, 216, this Court, while holding that the Gastonia City Board of Education was a local board which did not meet the classification of "state agency," said this:

> [W]e may well consider the State Board of Agriculture, G.S. 106-2, the Board of Conservation and Development, G.S. 113-4, and The State Board of Public Welfare, G.S. 108-1, in the same general category as the State Board of Education and the State Highway & Public Works Commission.

The Ports Authority contends that, like the State Board of Education, the State Board of Transportation and those other State agencies mentioned in *Turner*, it was created by the General Assembly as an agency of the State to perform a well-recognized governmental function, to-wit, to provide facilities for the transportation of goods, wares and merchandise both into and out of the State by means of carriers over land and water. We agree.

[3] We hold that, as an agency of the State of North Carolina, the State Ports Authority is clothed with immunity from actions based on its alleged negligence from whatever source except to the extent that such immunity has been waived, and that the State, by virtue of the enactment of State Tort Claims Act, has specifically and explicitly waived that immunity as to tort claims falling within the ambit of that Act without regard to the nature of the function out of which they arise. Thus the State Tort Claims Act is applicable to plaintiffs' claims.

Plaintiff-appellants further contend that the Legislature has waived the sovereign immunity of the State by enacting G.S. § 143B-454(1) permitting the Ports Authority to "sue or be sued" and has consented that tort claims against the Authority may be prosecuted in the civil courts. We reject that contention. Waiver of sovereign immunity may not be lightly inferred and State

statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed. *Floyd v. Highway Commission,* 241 N.C. 461, 85 S.E. 2d 703 (1955). *See also Etheridge v. Graham, Comr. of Agriculture,* 14 N.C. App. 551, 188 S.E. 2d 551 (1972).

The State of North Carolina has not given its consent for the Ports Authority to be sued in the courts of the State. Contrary to the argument advanced by the plaintiffs, such consent cannot be extracted from G.S. § 143B-454(1) which vests the Ports Authority with the authority to "sue or be sued." Statutory authority to "sue or be sued" is not always construed as an express waiver of sovereign immunity and is not dispositive of the immunity defense when suit is brought against an agency of the State. This is true whether the suit is brought in a state court, *see O & B, Inc. v. Maryland-Nat'l Capital Park, etc.,* 279 Md. 459, 369 A. 2d 553 (1977); or in federal court, *Chesapeake Bay Bridge and Tunnel District v. Lauritzen,* 404 F. 2d 1001 (4th Cir. 1968); *see also Maryland Port Administration v. S S American Legend,* 453 F. Supp. 584 (D. Md. 1978); *International Long. Ass'n v. North Carolina St. Ports Au.,* 370 F. Supp. 33 (E.D.N.C. 1974).

[4]  We conclude that the language of the State Tort Claims Act and G.S. § 143-454(1), vesting the Ports Authority with authority to sue or be sued, when read together, evidence a legislative intent that the Authority be authorized to sue as plaintiff in its own name in the courts of the State but contemplates that all tort claims against the Authority for money damages will be pursued under the State Tort Claims Act.

We do not find apposite the line of cases from the federal courts urged upon us by plaintiffs which hold in effect that when the State leaves its traditional governmental activity and enters upon a proprietary enterprise that is subject to congressional regulation, it waives its sovereign immunity and its immunity under the Eleventh Amendment,[3] and subjects itself to that

---

3. The State of North Carolina is protected against suits for damages by its citizens in the federal courts by the Eleventh Amendment to the United States Constitution as well as by the doctrine of sovereign immunity. *See International Long. Ass'n v. North Carolina Ports. Au.,* 511 F. 2d 1007 (4th Cir. 1975); *Employees v. Missouri Public Health Dept.,* 411 U.S. 279, 36 L.Ed. 2d 251 (1973) (Brennan, J., dissenting).

regulation as fully as if it were a private person or corporation, and thereby is subject to suit in federal court.[4] We are here in no way concerned with congressional regulations or the immunity of the State from suit in the federal courts. We do not equate waiver of Eleventh Amendment immunity for purposes of subjection to congressional regulation and suit in federal courts to waiver in State court for purposes of general tort liability. Moreover, the United States Supreme Court has made it clear that the mere entry of a State into the field of congressional regulation will not subject it to suit by private individuals. *Parden v. Terminal R. Co.*, 377 U.S. 184, 12 L.Ed. 2d 233 (1964); *Red Star Towing and Transportation Co. v. Dept. of Transportation of New Jersey*, 423 F. 2d 104 (3rd Cir. 1970).

Based on the foregoing, we hold that the Superior Court had no jurisdiction over plaintiffs' claims.

> When statutory provision has been made for an action against the State, the procedure prescribed by statute must be followed, and the remedies thus afforded are exclusive. The right to sue the State is a conditional right, and the terms prescribed by the Legislature are conditions precedent to the institution of the action. *Kirkpatrick v. Currie, Comr. of Revenue*, 250 N.C. 213, 108 S.E. 2d 209; *Duke v. Shaw, Comr. of Revenue*, 247 N.C. 236, 100 S.E. 2d 506; *Insurance Co. v. Unemployment Compensation Commission, supra; Rotan v. State, supra.*

*Insurance Co. v. Gold, Commissioner of Insurance*, 254 N.C. 168, 173, 118 S.E. 2d 792, 795; *see Harrison Associates v. State Ports Authority*, 280 N.C. 251, 185 S.E. 2d 793. Because an action in tort

---

4. The United States Court of Appeals for the Fourth Circuit has held that a state agency such as the Ports Authority waives the protection of sovereign immunity and Eleventh Amendment immunity when it enters the federally regulated domain of interstate and foreign commerce and engages in business of a proprietary or commercial nature. *Chesapeake Bay Bridge and Tunnel District v. Lauritzen*, 404 F. 2d 1001; *Parden v. Terminal R. Co.*, 377 U.S. 184, 12 L.Ed. 2d 233 (1964); *Dawkins v. Craig*, 483 F. 2d 1191 (4th Cir. 1973). *See also Maryland Port Administration v. S S American Legend*, 453 F. Supp. 584. In three recent cases this rule was applied to hold that the Ports Authorities of North Carolina, South Carolina and Maryland are not immune from suits in federal court under admiralty jurisdiction. *International Long. Ass'n v. North Carolina Ports Au.*, 511 F. 2d 1007; *Doris Trading Corp. v. S S Union Enterprise*, 406 F. Supp. 1093 (S.D.N.Y. 1976); *Maryland Port Administration v. S S American Legend*, 453 F. Supp. 584.

against the State and its departments, institutions, and agencies is within the exclusive and original jurisdiction of the Industrial Commission, a tort action against the State is not within the jurisdiction of the Superior Court.[5]

Since the Tort Claims Act provides that tort actions against the State, its departments, institutions, and agencies must be brought before the Industrial Commission, it is settled law that the Superior and District Courts of this State have no jurisdiction over a tort claim against the State, or its agencies, and in this case, the North Carolina State Ports Authority, an agency of the State of North Carolina. *See Etheridge v. Graham, Comr. of Agriculture,* 14 N.C. App. 551, 188 S.E. 2d 551, and cases there cited.

---

5. We are not unmindful of the third party practice rules. We note that even though, under Rule 14(c) of the North Carolina Rules of Civil Procedure (Third Party Practice), the State may be made a third party in a tort action, the rules governing liability and the limits of liability of the State and its agencies as provided in the State Tort Claims Act apply. Rule 14(c) provides as follows:

(c) *Rule applicable to State of North Carolina.* — Notwithstanding the provisions of the Tort Claims Act, the State of North Carolina may be made a third party under subsection (a) or a third-party defendant under subsection (b) in any tort action. In such cases, the same rules governing liability and the limits of liability of the State and its agencies shall apply as is provided for in the Tort Claims Act.

N.C. Gen. Stat. 1A-1, Rule 14(c) (Supp. 1981).

We also note that, although under the Uniform Contribution Among Tort-Feasors Act, (G.S. § 1B-1), the State may be sued for contribution as a joint tort feasor, these same rules governing and limiting the liability of the State and its agencies apply. G.S. § 1B-1(h) provides as follows:

(h) The provisions of this Article shall apply to tort claims against the State. However, in such cases, the same rules governing liability and the limits of liability shall apply to the State and its agencies as in cases heard before the Industrial Commission. The State's share in such cases shall not exceed the pro rata share based upon the maximum amount of liability under the Tort Claims Act.

N.C. Gen. Stat. § 1B-1 (Supp. 1981).

In our recent case of *Teachy v. Coble Dairies, Inc.,* 306 N.C. 324, 293 S.E. 2d 182 (1982), there was both a claim against the State for contribution and a claim for indemnification. We held there that the State may be joined as a third party defendant, in the State courts, whether in an action for contribution or in an action for indemnification.

We hold (1) that the North Carolina State Ports Authority is an "agency of the State" and entitled to claim the defense of sovereign immunity; (2) that the State has waived its immunity for tort claims covered by the State Tort Claims Act, and that said Act is applicable to plaintiffs' claims; and (3) that plaintiffs' claims must be pursued under the provisions of the Tort Claims Act, and thus the Superior Court, Carteret County, lacks jurisdiction to adjudicate plaintiffs' claims as the North Carolina Industrial Commission is vested with exclusive original jurisdiction of plaintiffs' tort actions against the State Ports Authority.

The trial judge erred in denying defendant Ports Authority's motion to dismiss. The Court of Appeals was correct in reversing the trial judge's order. The decision of the Court of Appeals is affirmed without prejudice to plaintiff to file a new claim with the Industrial Commission within one year of the date of the filing of this opinion upon compliance with the requirements of G.S. § 143-291 *et seq.*

Affirmed.

Justice FRYE did not participate in the consideration or decision of this case.