IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-107

No. 457PA19-2

Filed 4 November 2022

SHARELL FARMER

v.

TROY UNIVERSITY, PAMELA GAINEY, and KAREN TILLERY

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 276 N.C. App. 53, 2021-NCCOA-36 affirming an order entered on 1 July 2019 by Judge Andrew T. Heath in Superior Court, Cumberland County. Heard in the Supreme Court on 30 August 2022.

*Kennedy, Kennedy, Kennedy and Kennedy, LLP, by Harvey L. Kennedy and Harold L. Kennedy III, for plaintiff-appellant.*

*Ford & Harrison, LLP, by Benjamin P. Fryer, for defendant-appellees.*

EARLS, Justice.

¶ 1    Troy University is an accredited, four-year state university with multiple physical campuses in Alabama that opened an office in Fayetteville, North Carolina, specifically to recruit military students for its on-line programs. When a former North Carolina employee filed suit against Troy University alleging various state tort claims arising out of his employment in Fayetteville and his termination, the

University asserted that sovereign immunity barred his claims. Reading two 2019 United States Supreme Court decisions together and consistent with earlier analogous precedent, we conclude that Troy University's actions in registering as a non-profit corporation in North Carolina and engaging in business here subject to the sue and be sued clause of the North Carolina Nonprofit Corporation Act, N.C.G.S. §55A-3-02(a)(1) (2021), constituted an explicit waiver of its sovereign immunity. *See Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485 (2019); *Thacker v. Tenn. Valley Auth.*, 139 S. Ct 1435 (2019); *see also Georgia v. City of Chattanooga*, 264 U.S. 472 (1924).

## I.     Background

Troy University, a state institution, has its primary campus in Troy, Alabama. Although Troy University does not have a campus in North Carolina, it registered with the North Carolina Secretary of State as a nonprofit corporation on 25 September 2006 and leased an office building in Fayetteville, North Carolina, near Fort Bragg, where it conducted its business. Mr. Farmer was hired by Troy University in May 2014 as a recruiter and worked there until 9 September 2015. As part of his employment, Mr. Farmer recruited military personnel from Fort Bragg to take on-line educational courses that originated from Troy University's main campus in Troy, Alabama. Throughout his employment, he was the top recruiter in the southeastern region of the United States.

Mr. Farmer claims that while employed at Troy University, he was subjected to frequent and ongoing sexual harassment by Pamela Gainey and Karen Tillery, both of whom also worked at the Troy University office in Fayetteville, North Carolina. This harassment included unwanted touching, and making false statements to third parties about Mr. Farmer's sexual relationships with married women and female students. Mr. Farmer further alleges he witnessed students being subjected to sexual harassment, such as one student who was "challenged" by Mses. Gainey and Tillery "to pull his pants down and show them his penis" and another male student whom they called a "faggot."

Around May 2015, Mr. Farmer filed a complaint with both Troy University's Human Resources Department and Troy University's District Director about the sexual harassment he and other males had experienced. Although Mr. Farmer had given Troy University the names of several witnesses, Troy University did not interview any witnesses before deciding that Mr. Farmer's complaint lacked merit.

Mr. Farmer further alleges that, following his May 2015 complaint, Ms. Gainey retaliated against him by increasing his work hours and making his working conditions unreasonably onerous. On 9 September 2015, Mr. Farmer was terminated from his job at Troy University. He was escorted from the building by two police officers, one with a hand on their gun, and the other with a hand on Mr. Farmer's shoulder pushing him forward. He was also threatened with arrest if he ever set foot

on the property again. As a result of this treatment, and his termination from Troy University, Mr. Farmer became homeless, could not obtain another job, and suffered serious mental health consequences.

¶ 6    On 24 July 2018, Mr. Farmer filed this suit against Troy University and the individual defendants, Ms. Gainey, and Ms. Tillery. Mr. Farmer asserted claims against Troy University for (1) wrongful discharge from employment in violation of public policy, and (2) negligent retention or supervision of an employee, or both. He also asserted claims against all defendants for intentional infliction of mental and emotional distress and tortious interference with contractual rights. In the alternative, Mr. Farmer also advanced a claim against all defendants alleging a violation of his rights under the North Carolina Constitution, in the event that the trial court found his other claims were barred by sovereign immunity.

¶ 7    On 3 October 2018, all defendants (Troy University, Ms. Gainey, and Ms. Tillery) filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, which the trial court denied. On 6 December 2018, all defendants filed an answer to Mr. Farmer's complaint, generally denying the claims and asserting numerous defenses, including sovereign immunity. On 13 May 2019, the Supreme Court of the United States issued its opinion in *Franchise Tax Board of California v. Hyatt* (*Hyatt III*), a five-to-four decision, and held that "States retain their sovereign immunity from private suits brought in the courts of other

States." *Hyatt III*, 139 S. Ct. 1485, 1492 (2019). Before *Hyatt III*, the rule was that States were allowed, but not constitutionally required, to extend sovereign immunity to sister States as a matter of comity. *See Nevada v. Hall*, 440 U.S. 410, 425 (1979). Under that rule, Alabama could be sued in North Carolina by a private party if North Carolina chose not to acknowledge Alabama's sovereign immunity. *See id.* at 426–27; *see, e.g. Atl. Coast Conference v. Univ. of Md.*, 230 N.C. App. 429, 440 (2013) (declining to extend sovereign immunity as a matter of comity in a contract action, stating "it does not follow that because we decided to extend comity to the University of Virginia in *Cox* we must, ipso facto, extend sovereign immunity to all the educational institutions of our sister states irrespective of the attendant circumstances.") (citing *Cox v. Roach*, 218 N.C. App. 311, 318 (2012)). *Hyatt III* established that in general, states are required to recognize the sovereign immunity of other states as a matter of Federal Constitutional law.

¶ 8      Two days after the decision in *Hyatt III*, Troy University filed another motion to dismiss on 15 May 2019 based on sovereign immunity, pursuant to Rules 12(b)(2) and 12(b)(6) of the North Carolina Rules of Civil Procedure, while individual defendants Gainey and Tillery simultaneously sought dismissal of all claims against them based on mootness in light of a stipulation filed on 25 April 2019 in which Mr. Farmer agreed not to seek damages against the individual defendants. On 24 May 2019, defendants filed an amended motion to dismiss, or in the alternative, for

judgment on the pleadings on the same grounds. On 3 June 2019, Mr. Farmer filed his response. On 1 July 2019, the trial court entered an order granting the motion to dismiss as to all defendants, citing *Hyatt III*. Mr. Farmer appealed, but the Court of Appeals rejected Mr. Farmer's arguments and affirmed the trial court's order. *Farmer v. Troy Univ.*, 276 N.C. App. 53, 2021-NCCOA-36, ¶52. Mr. Farmer filed a petition for discretionary review pursuant to N.C.G.S. §7A-31 and this Court granted review.

## II. Sovereign Immunity

This Court reviews de novo a motion to dismiss made under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. *E.g. Krawiec v. Manly*, 370 N.C. 602, 606 (2018) (stating standard of review for a 12(b)(6) motion). "[Q]uestions of law regarding the applicability of sovereign or governmental immunity" are also reviewed de novo. *Est. of Long by and through Long v. Fowler*, 378 N.C. 138, 2021-NCSC-81, ¶ 12 (quoting *Wray v. City of Greensboro*, 370 N.C. 41, 47 (2017)). Furthermore, sovereign immunity may be a defense under Rule 12(b)(2) of the North Carolina Rules of Civil Procedure.[1] In this case, as noted above, the motion and the trial court's order were made pursuant to both Rule 12(b)(2) and Rule 12(b)(6); however the questions

---

[1] "As was the case in *Teachy v. Coble Dairies, Inc.* we need not decide whether a motion to dismiss on the basis of sovereign immunity is properly designated as a Rule 12(b)(1) motion or a 12(b)(2) motion." *Est. of Long*, ¶ 12 n.1; *see Teachy v. Coble Dairies, Inc.* 306 N.C. 324, 328 (1982) (explaining this designation is crucial in North Carolina because denial of a Rule 12(b)(2) motion is immediately appealable by statute but the denial of a 12(b)(1) motion is not.) In this case, the motion to dismiss was granted and neither Mr. Farmer's appeal to the Court of Appeals nor this Court was an interlocutory appeal. *Est. of Long*, ¶12 n.1.

of whether there is personal jurisdiction over defendants and whether plaintiff has stated a claim for relief in this particular case both turn on the sole issue of sovereign immunity, and the standard of review is the same for both.[2]

¶ 10    The initial issue in this appeal is whether Mr. Farmer's state tort claims against defendants are barred in North Carolina under the doctrine of sovereign immunity by virtue of Troy University's status in Alabama as a public university. The Court of Appeals concluded that under *Hyatt III*, no suit may be maintained because "States retain their sovereign immunity from private suits brought in the courts of other States." *Farmer*, ¶ 14 (quoting *Hyatt III*, 139 S. Ct. at 1492).

¶ 11    The doctrine of sovereign immunity, establishing that a sovereign cannot be sued without its consent, *see Alden v. Maine,* 527 U.S. 706, 715–16 (1999), was widely accepted in the states at the time the Constitution was drafted. *Hyatt III*, 139 S. Ct. at 1493–1495. As Alexander Hamilton explained in The Federalist No. 81, "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. . . and the exemption is. . . now enjoyed by the government of every State in the Union." The Federalist No. 81, at 487 (Alexander Hamilton) (J. & A. McLean ed., 1788).

---

[2] The trial court's order does not distinguish any separate ground for dismissal of the individual defendants. Mr. Farmer's appeal only raises the question of whether suit in North Carolina against Troy University is barred by sovereign immunity. Therefore, we have no occasion here to consider the extent to which another state's sovereign immunity bars individual defendants' liability for their intentional torts in North Carolina.

Sovereign immunity is enshrined in Alabama's Constitution, which declares that "the State of Alabama shall never be made a defendant in any court of law or equity." *Ex parte Davis*, 930 So.2d 497, 500 (Ala. 2005) (quoting Ala. Const. art I, § 14). "This immunity extends to [the State of Alabama's] institutions of higher learning. *Ala. State Univ. v. Danley*, 212 So.3d 112, 122 (Ala. 2016) (quoting *Taylor v. Troy State University*, 437 So.2d 472, 474 (Ala.1983)). Moreover, Alabama "State officers and employees, in their official capacities and individually, [also are] absolutely immune from suit when the action is, in effect, one against the State." *Id.* (quoting *Philips v. Thomas*, 555 So. 2d 81, 83 (Ala.1989)). This principle is familiar to North Carolina where our state institutions of higher learning are also deemed to be arms of the State protected by sovereign immunity except in certain circumstances. *See Corum v. Univ. of N.C.*, 330 N.C. 761, 786 (1992) (finding that although the University of North Carolina could typically claim sovereign immunity, the plaintiff had a direct cause of action under the state constitution); *Smith v. State*, 289 N.C. 303, 320 (1976) (holding that the State of North Carolina, including its agencies, consents to be sued for damages for breach of contract whenever it enters into a valid contract).

Before 2019, controlling United States Supreme Court precedent in *Nevada v. Hall* provided that States maintained their sovereign immunity from suit in other state courts as a matter of comity. 440 U.S. 410, 425 (1979). But in 2019, the United

States Supreme Court explicitly overturned its holding in *Hall. See Hyatt III*, 139 S. Ct. at 1490, 1492 (concluding that *Nevada v. Hall* is "contrary to our constitutional design"). In *Hyatt III*, the Court determined that States retained their sovereign immunity from private suits brought in the courts of other states regardless of comity. *Id.* at 1492. Put another way, the *Hyatt III* decision holds that the United States Constitution does not simply permit a State to grant its sister States immunity from suit but requires it. *See id.* at 1499 (Breyer, J., dissenting). Under *Hyatt III* and the United States Constitution, as a general matter, Troy University is entitled to sovereign immunity from suit without its consent in the state courts of every state in the country. *See Hyatt III*, 139 S. Ct. at 1490 (majority opinion).

### III.   Waiver of Sovereign Immunity

Next, this Court must determine whether Troy University has explicitly waived its sovereign immunity from suit in North Carolina. As the Court of Appeals noted, any waiver of sovereign immunity must be explicit. *See Sossamon v. Texas*, 563 U.S. 277, 284 (2011); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999). Nonetheless, United States Supreme Court precedent does not support the Court of Appeals' conclusion that a sue and be sued clause cannot constitute an explicit waiver of sovereign immunity. Specifically, we find that when Troy University registered as a nonprofit corporation here and engaged in business in North Carolina, it accepted the sue and be sued clause in the

North Carolina Nonprofit Corporation Act and thereby explicitly waived its sovereign immunity from suit in this state.

The North Carolina Nonprofit Corporation Act covers all nonprofit corporations in North Carolina. This act contains a sue and be sued clause. Specifically, the Act provides:

> (a) Unless its articles of incorporation or this Chapter provides otherwise, every corporation has perpetual duration and succession in its corporate name and has the same powers as an individual to do all things necessary or convenient to carry out its affairs, including without limitation, power:
> (1) *To sue and be sued*, complain and defend in its corporate name. . . .

N.C.G.S. § 55A-3-02(a)(1) (emphasis added). It is crucial to our analysis that *Hyatt III* did not involve a sue and be sued clause. *See generally Hyatt III*, 139 S. Ct. 1485. Instead, *Hyatt III* involved an individual who misrepresented his residency as Nevada to avoid paying California more than ten million dollars in taxes. *Id.* at 1490–91. Suspecting Mr. Hyatt's move to Nevada was a sham, the Franchise Tax Board of California conducted an audit, which involved sharing personal information with business contacts and interviews with Hyatt's estranged family members. *Id.* Mr. Hyatt subsequently sued the Franchise Tax Board of California in Nevada state court for torts he alleged were committed during the audit. *Id.* at 1491. On these facts, the Court overruled *Nevada v. Hall*, 440 U.S. 410 (1979), and held that "States retain

their sovereign immunity from private suits brought in the courts of other States." 139 S. Ct. at 1492.

¶ 16          In contrast, in *Thacker v. Tennessee Valley Authority*, 139 S. Ct. 1435 (2019), the Supreme Court addressed a sue and be sued clause and its effect on sovereign immunity. In *Thacker* the sue and be sued clause at issue was embedded in the Tennessee Valley Authority Act of 1933, which states that, "the Tennessee Valley Authority . . . [m]ay sue or be sued in its corporate name." 139 S. Ct. at 1438. There the Court determined the sue and be sued clause "serv[ed] to waive sovereign immunity otherwise belonging to an agency of the Federal Government." *Id*. at 1440 (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988)). The Court further explained that "[s]ue and- be- sued- clauses . . . 'should be liberally construed' " and opined that those words " 'in their usual and ordinary sense'. . . 'embrace all civil process incident to the commencement or continuance of legal proceedings.' " *Id*. at 1441 (citing *Fed. Hous. Admin. v. Burr*, 309 U.S. 242, 245–246 (1940)). But a sue and be sued clause is not without limits, and the Court explained that although a sue and be sued clause allows suits to proceed against a public corporation's commercial activity, just as these actions would proceed against a private company, suits challenging an entity's governmental activity may be limited. *Id*. at 1443. In cases involving governmental activities in which a sue and be sued clause is present, immunity will only apply "if it is clearly shown that prohibiting the type of suit at issue is necessary to avoid grave

interference with a governmental function's performance." *Id.* (cleaned up). Thus, while *Hyatt III*, 139 S. Ct. at 1492, requires a State to acknowledge a sister State's sovereign immunity, *Thacker* recognizes that a sue and be sued clause can act as a waiver of sovereign immunity when a state entity's nongovernmental activity is being challenged. 139 S. Ct. at 1443.

The parties in this case disagree about how to characterize Troy University's activities. While Troy University asserts its purpose in North Carolina was to continue the governmental function of higher education, Mr. Farmer argues Troy University's activities were commercial in nature because they involved marketing and selling on-line educational programs.[3] While providing students with an education may be a governmental activity for the Alabama Government in Alabama, here Troy University was engaged in the business of recruiting students for on-line education— recruitment that occurred in North Carolina for students who remained in North Carolina. The complaint clearly alleges that while in North Carolina, Troy University engaged in marketing and recruitment. Mr. Farmer's job was to help Troy University carry out its commercial activities by recruiting military personnel in

---

[3] It is difficult to posit how, absent a cooperation agreement, memorandum of understanding, or joint venture with a North Carolina State agency, another State legitimately could engage in governmental functions within North Carolina. Likewise, if the conduct at issue is not in some fashion controlled by the citizens of North Carolina, the entity cannot rightly be engaged in a governmental activity because in this State, "all government of right originates from the people." N.C. Const. art. I, § 2. Nevertheless, we do not need to resolve this issue because, for purposes of the motion to dismiss, Troy University's activities are alleged to be business activities.

North Carolina to enroll in and pay for educational courses. Because Troy University engaged in commercial rather than governmental activity, the sue and be sued clause is to be liberally construed. *See Thacker,* 139 S. Ct. at 1441.

¶ 18 In doing so, this Court concludes that when Troy University chose to do business in North Carolina, while knowing it was subject to the North Carolina Nonprofit Corporation Act and able to take advantage of the Act's sue and be sued clause, *see* N.C.G.S. § 55A-3-02, it explicitly waived its sovereign immunity. *Sossamon,* 563 U.S. at 284 (a waiver of sovereign immunity cannot be "implied" and must be "unequivocally expressed").

¶ 19 Troy University argues that under this Court's precedent in *Guthrie v. North Carolina State Ports Authority*, 307 N.C. 522 (1983), a sue and be sued clause "is not always construed as an express waiver of sovereign immunity and is not dispositive of the immunity defense when suit is brought against an agency of the State." *Id.* at 538. But this Court's holding in *Guthrie* is not inconsistent with our ruling today. Simply because something is not "always . . . an express waiver of sovereign immunity" *id.*, does not mean it can never be a waiver of the same. Furthermore, *Guthrie* is distinguishable from the case at bar because *Guthrie* involved the application of the North Carolina Tort Claims Act to a North Carolina agency, the North Carolina State Ports Authority, while the present case involves a sister state's

entity registered as a nonprofit corporation in North Carolina to conduct business. *See id*. at 524.

¶ 20      We also find additional support for Troy University's waiver of sovereign immunity in chapter 55A, article 15 of the North Carolina Nonprofit Corporation Act. Under this portion of the Act any foreign corporation operating in North Carolina must obtain a certificate of authority. N.C.G.S. § 55A-15-01 (2021). "A certificate of authority authorizes the foreign corporation to which it is issued to conduct affairs in [North Carolina] . . . " *Id*. § 55A-15-05(a) (2021). Foreign corporations operating in North Carolina with a valid certificate of authority have "the same but no greater rights and [have] the same but no greater privileges as, and [are] subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character." *Id*. § 55A-15-05(b) (2021). Taking this provision together with the United States Supreme Court's holding in *Georgia v. City of Chattanooga*, we find that when Troy University obtained a certificate of authority to operate in North Carolina, it waived any sovereign immunity it had and agreed to be treated like "a domestic corporation of like character."[4] *Id*.; *see Georgia v. City of Chattanooga*, 264 U.S. 472 (1924).

―――――――――

[4] Here a "domestic corporation of like character" is a private university established through the Secretary of State's office, as a nonprofit corporation, which does not enjoy sovereign immunity. State universities are incorporated by state statute. *See e.g.*, N.C.G.S. § 116-3 (2021).

¶ 21    In *City of Chattanooga*, the State of Georgia undertook construction of a railroad which ran from Atlanta to Chattanooga, Tennessee. 264 U.S. at 478. In furtherance of the project, Georgia purchased approximately eleven acres, which at the time were located in the outskirts of Chattanooga, to use as a railroad yard. *Id*. As the city grew, there was a demand for extending one of the principal city streets through Georgia's railroad yard. *Id*. at 479. The City began legal proceedings to condemn the land and named the State of Georgia as a defendant. Georgia contended that it had never consented to be sued in Tennessee courts and that sovereign immunity applied. *Id*. The Court determined that by "acquir[ing] land in another State for the purpose of using it in a private capacity, Georgia [could] claim no sovereign immunity." *Id*. at 479–480. Specifically, when Tennessee granted Georgia permission to acquire and use the land, and Georgia accepted the terms of the agreement, the State of Georgia consented to be made a party to condemnation proceedings. *Id*. at 480.

¶ 22    The same is true in this case. By requesting and receiving a certificate of authority to do business in North Carolina, renting a building here, and hiring local staff, Troy University, as an arm of the State of Alabama, consented to be treated like "a domestic corporation of like character," and to be sued in North Carolina. *Id*. § 55A-3-02(a)(1). N.C.G.S. § 55A-15-05.

¶ 23    The Court of Appeals also relied on this Court's precedent in *Evans ex. rel. Horton v. Housing Authority of Raleigh,* 359 N.C. 50 (2004), to support its conclusion that governmental immunity bars Mr. Farmer's suit against Troy University, however, that case does not apply here because it involved a different immunity question. In *Evans* this Court examined whether a municipal corporation could be sued in state court and explained that "[t]he State's sovereign immunity applies to both its governmental and proprietary functions, while the more limited governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions." 359 N.C. at 53 (citing *Guthrie,* 307 N.C. at 533). But here the question is to what degree does sovereign immunity apply to another State engaged in business in North Carolina. This case involves actions by a State other than North Carolina, while *Evans* involved the actions of a North Carolina municipal entity, the Housing Authority of the City of Raleigh. 359 N.C. at 51 (addressing the Housing Authority's failure to repair a property). Therefore, *Evans* does not apply and does not foreclose the conclusion we reach here, namely, that Troy University has explicitly waived sovereign immunity by engaging in business as a nonprofit corporation registered to do business in this state.

¶ 24    Lastly, Mr. Farmer argued in the alternative that, when no other remedy exists, under the Tenth Amendment to the United States Constitution and article I,

section 2 of the North Carolina Constitution, the State has the sovereign right to protect its citizens from sexual harassment and the other torts alleged in his complaint. Because we hold that Troy University waived its sovereign immunity and Mr. Farmer can pursue his claims against defendants, there is no need for this Court to address plaintiff's asserted violation under the North Carolina Constitution.

## IV.   Conclusion

While the United States Constitution requires States to afford one another sovereign immunity from private suits brought in other states, this privilege can be explicitly waived through a sue and be sued clause. *See Hyatt III*, 139 S. Ct. at 1492 (2019); *Thacker*, 139 S. Ct. at 1440 (2019). When Troy University entered North Carolina and conducted business in North Carolina, while knowing it was subject to the North Carolina Nonprofit Corporation Act and its sue and be sued clause, it explicitly waived its sovereign immunity. *See* N.C.G.S. § 55A-3-02. Additionally, by requesting and receiving a certificate of authority to do business in North Carolina, Troy University consented to be treated like "a domestic corporation of like character" and therefore to be sued in North Carolina. *Id*. § 55A-15-05; *see City of Chattanooga*, 264 U.S. at 480. Accordingly, concluding that the doctrine of sovereign immunity does not bar Mr. Farmer's suit against these defendants, we reverse the Court of Appeals decision and remand this case to that court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Justice BERGER concurring.

The founding fathers understood that state sovereign immunity was not absolute. In Federalist 81, Alexander Hamilton stated that "[i]t is inherent in the nature of sovereignty, not to be amendable to the suit of an individual *without its consent*." The Federalist No. 81 at 422 (Alexander Hamilton) (Gideon ed. 2001). The distinction between a governmental function and a commercial function plays an important role in clarifying the extent of Troy University's consent to be sued in North Carolina. I concur in the result reached by the majority but write separately because I would have decided the case with greater emphasis on the proprietary actions by Troy University. *See Georgia v. City of Chattanooga* 264 U.S. 472, 44 S. Ct. 369, 68 L. Ed. 796 (1924), and *Thacker v. Tennessee Valley Authority* 139 S. Ct. 1435, 203 L. Ed. 2d 668 (2019).

At the founding, "both Federalists and Antifederalists saw the lack of state suability in the courts of sister states as the beginning point of their arguments," thus it was assumed that a state could not be haled into the court of another state without consent. Ann Woolhandler, *Interstate Sovereign Immunity*, 2006 Sup. Ct. Rev. 249, 259; *see also Franchise Tax Bd. v. Hyatt*, 139 S. Ct. 1485, 1494, 203 L. Ed. 2d 768, 776 (2019). The adoption of the Eleventh Amendment displayed that the "the Constitution was understood, in light of its history and structure, to preserve the States' traditional immunity from private suits." *Hyatt*, 139 S. Ct. at 1496, 203 L. Ed. 2d at 778 (quoting *Alden v. Maine*, 527 U.S. 706, 724, 119 S. Ct. 2240, 2252, 144

L. Ed. 2d 636 (1999)).  However, state sovereign immunity may be waived by consent. *Principality of Monaco v. Mississippi*, 292 U.S. 313, 321, 54 S. Ct. 745, 747 (1934).

¶ 28  The U.S. Supreme Court held in *Hyatt* that "States retain their sovereign immunity from private suits brought in the courts of other States."  139 S. Ct. at 1492, 203 L. Ed. 2d at 774.  Further, the Court concluded that "the Constitution assumes that the States retain their sovereign immunity except as otherwise provided[;] it also fundamentally adjusts the States' relationship with each other and curtails their ability, as sovereigns, to decline to recognize each other's immunity."  *Id. at* 1493, 203 L. Ed. 2d at 775.  In short, a nonconsenting state cannot be sued by a private party in the courts of a different state.  *See id.* at 1490, 203 L. Ed. 2d at 772.  Thus, for a suit against a state to be maintained in the forum of a sister state, there must be consent to be sued.

¶ 29  In *Thacker*, the United States Supreme Court addressed how far a waiver of sovereign immunity extends when that waiver is premised upon consent via a sue-and-be-sued clause in a statute.  139 S. Ct. at 1438–39, 203 L. Ed. 2d at 672–73. *Thacker* involved the Tennessee Valley Authority (TVA).  *Id.* at 1438–39, 203 L. Ed. 2d at 672–73.  When Congress created the TVA by federal statute, it "decided . . . that the TVA could 'sue and be sued in its corporate name.' "  *Id.* at 1439, 203 L. Ed. 2d at 673 (citing 16 U.S.C. § 831c(b)).  To determine the extent of the sovereign immunity waiver, the Court looked to the distinctions between commercial and governmental

functions, reasoning that "a suit challenging a commercial act will not 'gravel[y]'—or, indeed, at all—interfere with the 'governmental functions.' " *Id.* at 1442–44, 203 L. Ed. 2d at 677 (quoting *Federal Housing Administration v. Burr*, 309 U.S. 242, 245, 60 S. Ct. 488, 84 L. Ed. 724 (1940)).

¶ 30 The Court concluded that "suits based on a public corporation's *commercial* activity may proceed as they would against a private company; only suits challenging the entity's governmental activity may run into an implied limit on its sue-and-be-sued clause." *Id.* at 1443, 203 L. Ed. 2d at 677. In short, the Court decided that the statute subjected the TVA to suit challenging its commercial activities, putting the TVA "in the same position as a private corporation." *Id.* at 1439, 203 L. Ed. 2d at 672–73. The Court did not decide whether the TVA might still have immunity from suits involving its engagement in governmental activities. *Id.* at 1439, 203 L. Ed. 2d at 673. Thus, the role of commercial versus governmental functions defines the scope of the waiver of sovereign immunity.

¶ 31 Similarly, *Georgia v. City of Chattanooga* describes the State of Georgia's engagement in commercial functions, and as such, *City of Chattanooga* is helpful in analyzing the case before us. In that case, the State of Georgia was engaged in proprietary activities related to construction of a railroad. 264 U.S. at 478, 44 S. Ct. at 369. In doing so, Georgia acquired land in the outskirts of the City of Chattanooga to locate a railroad yard. *Id.* at 478, 44 S. Ct. at 369. Tennessee sought to use its

eminent domain power to condemn the land, and Georgia asserted that Tennessee could not interfere with its possession in the land because "Georgia ha[d] never consented to be sued in the courts of Tennessee." *Id.* at 479, 44 S. Ct. at 370.

¶ 32          The U.S. Supreme Court determined that "[t]he sovereignty of Georgia was not extended into Tennessee. Its enterprise in Tennessee is a *private undertaking*. It occupies the same position there as does a *private corporation* authorized to own and operate a railroad, and, as to that property, it cannot claim sovereign privilege or immunity." *Id.* at 481, 44 S. Ct. 369, 370 (emphases added). The Court stated that "[h]aving acquired land in another state *for the purpose of using it in a private capacity*, Georgia can claim no sovereign immunity or privilege in respect of its expropriation." *Id.* at 479–80, 44 S. Ct. at 370 (emphasis added).

¶ 33          The Court also concluded that "[t]he terms on which Tennessee gave Georgia permission to acquire and use the land and Georgia's acceptance amounted to consent that Georgia may be made a party to condemnation proceedings." *Id.* at 480, 44 S. Ct. at 370. A Tennessee state statute provided that the State of Georgia would receive all the same "rights, privileges and immunities with the same restrictions" which are given to the Nashville & Chattanooga Company. *Id.* at 481, 44 S. Ct. at 370. In addition, a decision of the Court of Chancery Appeals of Tennessee determined that included "among the rights and restrictions [is] the right to sue and be sued," and state sovereignty was not offended because the relief only applied to Georgia's

"contracts as to the operation of the union depot situated in the city of Chattanooga." *Id.* at 482, 44 S. Ct. at 371 (quoting *E. Tenn., Va. & Ga. Ry. V. Nashville, Chattanooga & St. Louis Ry.*, 51 S.W. 202 (Tenn. Ct. Ch. App. 1897)). The U.S Supreme Court found that the decision of the Tennessee appeals court bolstered the claim that Georgia consented to sue and be sued in Tennessee with respect to its railroad property. *Id.* at 482, 44 S. Ct. at 371.

¶ 34 The Court focused on the "private" and "proprietary" rights of Georgia when it entered Tennessee to do business and rejected Georgia's contention that it was entitled to sovereign immunity in its commercial activities. *Id.* at 480–81, 44 S. Ct. at 370.

¶ 35 Both *Thacker* and *City of Chattanooga* support the conclusion that when a state engages in a proprietary function in another state and consents by agreement to the sister state's terms of doing business, it consents to suit and waives its sovereign immunity for those commercial activities. It follows that a state which engages in private enterprise activity and consents to the sister state's terms of doing business, should be treated like a similarly situated private corporation for its commercial activities while retaining immunity for its governmental functions.

¶ 36 Here, Alabama did not and has not waived all sovereign immunity in North Carolina. But as to its business activities in North Carolina related to the operation of Troy University for marketing and recruiting, Alabama has waived sovereign

immunity.

¶ 37        Troy University sought and obtained a certificate of authority under the North Carolina Nonprofit Corporation Act, rented a building, and hired staff in order to conduct business in North Carolina.  Troy University subsequently engaged in marketing and recruiting activities in North Carolina to encourage potential students to pay fees and attend online courses.  Troy University chose to engage in a "private undertaking" in a sister state.

¶ 38        To operate in the State of North Carolina, Troy University had to apply for and be granted a certificate of authority to conduct its business activities.  The North Carolina Nonprofit Corporation Act provides that a foreign corporation operating with a valid certificate of authority to conduct affairs in North Carolina "has the same but no greater rights and the same but no greater privileges as, and is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character."  N.C.G.S. § 55A-15-05(b) (2021).  Similar in effect to the statute in *City of Chattanooga*, this statute declares that Troy University, as a foreign, nonprofit corporation within North Carolina, will receive the same rights, privileges, duties, restrictions, penalties, and liabilities as a similarly situated private corporation.  Among the general powers afforded to nonprofit corporations within North Carolina is the power "[t]o sue and be sued."  N.C.G.S. § 55A-3-02(a).

¶ 39        Having affirmatively acted to obtain the benefit of conducting business in

North Carolina, and operating pursuant to the North Carolina Nonprofit Corporation Act, Troy University has consented to suit in this state for its commercial activities. Alabama has thus waived sovereign immunity related to the commercial activities of Troy University.

Justice BARRINGER dissenting.

At issue in this case is whether a private party can sue a public university of the State of Alabama in the courts of this State without Alabama's consent. The pivotal question before us is what does our Federal Constitution say about the sovereign immunity of a state when sued in a sister state. The United States Supreme Court has spoken. Nonetheless, this Court misunderstands the extent of the holding in *Franchise Tax Board of California v. Hyatt* (*Hyatt III*), 139 S. Ct. 1485 (2019), thus rendering a misguided departure from the United States Constitution, as well as our own precedent. Alabama's constitution explicitly states that Alabama cannot be sued. Ala. Const. art. I, § 14. And further, Alabama has not consented to be haled into court in this State. I respectfully dissent.

## I.  Background

Troy University is a public university in the State of Alabama with its main campus located in Troy, Alabama. Troy University is organized and exists under the laws of the State of Alabama. Ala. Code § 16-56-1 (2022). Plaintiff was employed by Troy University, although his office was in Cumberland County, North Carolina. Troy University hired plaintiff to travel "throughout the southeastern United States to recruit students."

Plaintiff was allegedly harassed by other employees of Troy University at its Cumberland County office. After plaintiff reported the harassment "to the appropriate officials at Troy University," he was allegedly suspended and then fired in retaliation. Plaintiff sued Troy University solely seeking monetary damages in

Superior Court, Cumberland County, alleging (1) wrongful discharge from employment in violation of public policy, (2) intentional infliction of mental and emotional distress, (3) tortious interference with contractual rights, (4) negligent retention and/or supervision of an employee, and (5) a state constitutional claim under Article I, Section 19.

Troy University filed a motion to dismiss under Rules 12(b)(2) and 12(b)(6) arguing that, under the recent Supreme Court of the United States decision in *Franchise Tax Board of California v. Hyatt* (*Hyatt III*), 139 S. Ct. 1485 (2019), Troy University, as a public education institution of the State of Alabama, was immune from suit based on sovereign immunity. The trial court agreed and allowed the motion. After plaintiff appealed, the Court of Appeals affirmed the trial court's dismissal of plaintiff's claims. *Farmer v. Troy Univ.*, 276 N.C. App. 53, 2021-NCCOA-36, ¶ 1.

## II.    Standard of Review

"Our review of the grant of a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is de novo." *Bridges v. Parrish*, 366 N.C. 539, 541 (2013). In reviewing a motion to dismiss, this Court considers "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Id.* (quoting *Coley v. State*, 360 N.C. 493, 494 (2006)). "Questions of statutory interpretation are questions of law and

are reviewed de novo." *In re D.S.*, 364 N.C. 184, 187 (2010). "We review constitutional

issues de novo." *State v. Whittington*, 367 N.C. 186, 190 (2014) (italics omitted).

### III.    Analysis

¶ 45        The Constitution of Alabama states "[t]hat the State of Alabama shall never

be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. Unlike

other states which establish sovereign immunity by statute or common law,

Alabama's sovereign immunity is enshrined in its constitution. Ala. Const. art. I, § 14.

"This immunity extends to [Alabama's] institutions of higher learning." *Taylor v. Troy*

*State Univ.*, 437 So. 2d 472, 474 (Ala. 1983) (citations omitted). In this case, Troy

University is a public education institution of the State of Alabama. Ala. Code § 16-

56-1. Yet plaintiff argues that either *Hyatt III* does not apply to Alabama in this

instance or that Alabama consented to be sued in North Carolina. Neither contention

is persuasive.

### A.  *Hyatt III* controls the outcome of this case.

¶ 46        In *Hyatt III*, the Supreme Court of the United States held that a State may not

"be sued by a private party without its consent in the courts of a different State." 139

S. Ct. at 1490. Similar to this case, Hyatt sued the Franchise Tax Board of California

in Nevada state court for intentional torts he alleges the agency committed during an

audit. *Id.* at 1490–91; *see also Franchise Tax Bd. of California v. Hyatt* (*Hyatt I*), 538

U.S. 488, 491 (2003). The trial court initially entered a judgment awarding Hyatt over

$490 million. *Hyatt III*, 139 S. Ct. at 1491. However, this judgment was eventually overturned based on California's sovereign immunity. *Id.* at 1499.

The facts of *Hyatt III* are clearly analogous to the present case. Both defendants, Franchise Tax Board of California and Troy University, claimed sovereign immunity in causes of actions arising from alleged intentional torts. *Id.* at 1491. Hyatt moved from California to Nevada in 1991, thereafter claiming Nevada as his primary residence on his 1991 and 1992 tax returns. *Id.* at 1490. In 1993, the Franchise Tax Board of California "launched an audit to determine whether Hyatt underpaid his 1991 and 1992 state income taxes by misrepresenting his residency." *Id.* at 1490–91. This investigation led to Hyatt's intentional tort claims. *Id.*

Also significant, *Hyatt III* explicitly overruled *Nevada v. Hall*. *Id.* at 1490 ("We . . . overrule our decision . . . in *Nevada v. Hall*.") (citation omitted). The facts in *Hall* are similar to those presented by this case. The respondents in *Hall* were California residents who brought a tort claim in California after they suffered severe injuries in an automobile collision in that state. The other driver was a University of Nevada employee. *Hall*, 440 U.S. 410, 411 (1979). Before the California state courts and ultimately the Supreme Court of the United States, Nevada argued that the Full Faith and Credit Clause of the United States Constitution mandated that California recognize the Nevada statute governing Nevada's sovereign immunity in tort actions. *Id.* at 412–14. Nevada's statute governing sovereign immunity limited "any award in

a tort action against the State pursuant to its statutory waiver of sovereign immunity" to a maximum of $25,000. *Id.* at 412. The Supreme Court rejected Nevada's argument, holding that when sovereign immunity or statutory limitations on waivers of sovereign immunity are "obnoxious to [ ] statutorily based policies of jurisdiction," a State is not required to recognize another State's sovereign immunity or limitations on waiver. *Id.* at 424.

¶ 49 The Supreme Court overruled "this erroneous precedent" in *Hyatt III*. 139 S. Ct. at 1492. *Hyatt III* reasoned that "*Hall* is contrary to our constitutional design and the understanding of sovereign immunity shared by the States that ratified the Constitution." *Id.* In reaching its conclusion, the Supreme Court performed an historical analysis of sovereign immunity and determined that "[t]he Constitution does not merely allow States to afford each other immunity as a matter of comity; it embeds interstate sovereign immunity within the constitutional design." *Id.* at 1497. In other words, whether to apply sovereign immunity is not a choice based on public policy. It is a constitutional mandate.

¶ 50 Just as "*Hall* is irreconcilable with our constitutional structure," *id.* at 1499, so too is this Court's application of sovereign immunity. In the instant case, we have claims similar to those in *Hall*. The plaintiffs in *Hall* sued the University of Nevada after one of its employees tortiously "drove across the dividing strip and collided head-on with the plaintiffs' vehicle." Brief for Respondents, *Hall*, 440 U.S. 410 (No. 77-

1337), 1978 WL 206995 (U.S.), at *4. The employee was conducting business in California, "pick[ing] up some television parts." *Id.* Similarly, plaintiff here is suing Alabama for the tortious actions of employees of a public university allegedly conducting business in North Carolina.

¶ 51 The Court here is making the same analytical mistake made in *Hall* that the Supreme Court rejected. Rather than being based on the weight of public policy, *see Hall*, 440 U.S. at 425–27, sovereign immunity applies because of "our constitutional structure and . . . the historical evidence showing a widespread preratification understanding that States retained immunity from private suits, both in their own courts and in other courts," *Hyatt III*, 139 S. Ct. at 1499.

¶ 52 *Hyatt III* controls the outcome of this case. *Id.* at 1492 ("States retain their sovereign immunity from private suits brought in the courts of other States."). Alabama's sovereign immunity is enshrined in its constitution. Ala. Const. art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."). Accordingly, Alabama carries its sovereign immunity into the courts of North Carolina.

¶ 53 *Hyatt III* grounded its reasoning in the "historical understanding of state immunity." *Id.* at 1498. According to *Hyatt III*, "at the time of the founding, it was well settled that States were immune under both the common law and the law of nations." *Id.* at 1494; *see also id.* at 1499 ("[T]he historical evidence show[s] a

widespread preratification understanding that States retained immunity from private suits, both in their own courts and in other courts.").

¶ 54        A review of the founders' understanding of sovereign immunity anchors it not in interstate commerce, but rather in the ability of private citizens to recover money from a State's treasury. As Hamilton wrote in Federalist 81:

> The contracts between a nation and individuals are only binding on the conscience of the sovereign, and have no pretensions to a compulsive force. They confer no right of action independent of the sovereign will. To what purpose would it be to authorize suits against states for the debts they owe? How could recoveries be enforced? It is evident that it could not be done without waging war against the contracting state; and to ascribe to the federal courts, by mere implication, and in destruction of a pre-existing right of the state governments, a power which would involve such a consequence, would be altogether forced and unwarrantable.

The Federalist No. 81, at 318–19 (Alexander Hamilton) (J. & A. McLean ed., 1788). Similarly, in his now favorably cited[1] dissent in *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419 (1793), Justice Iredell reviewed the status of sovereign immunity under the common law at the time of the founding and wrote "there is no doubt that neither in the State now in question, nor in any other in the *Union*, any particular Legislative

---

[1] *See, e.g., Alden v. Maine*, 527 U.S. 706, 715–16, 720, 727 (1999); *Hans v. Louisiana*, 134 U.S. 1, 14 (1890) ("[L]ooking at the subject as Hamilton did, and as Mr. Justice Iredell did, in the light of history and experience and the established order of things, the views of [Hamilton and Iredell] were clearly right,—as the people of the United States in their sovereign capacity subsequently decided.").

mode, authorizing a compulsory suit for the recovery of money against a State, was in being either when the Constitution was adopted, or at the time the judicial act was passed." *Id.* at 434–35 (Iredell, J., dissenting). Although the Court here properly acknowledges that Alabama cannot be haled into a North Carolina court without its consent, they do so without fully understanding the extent of the holding in *Hyatt III*. Additionally, this Court improperly held that Alabama waived its sovereign immunity.

**B. Alabama did not waive its sovereign immunity.**

### 1. *Alabama's Constitution prohibits waiver.*

As an initial matter, the mere fact that Alabama was doing business in North Carolina does not cause waiver of its immunity under *Hyatt III*. As noted above, *Hyatt III* overruled *Nevada v. Hall*, 440 U.S. 410 (1979). *See Hyatt III*, 139 S. Ct. at 1490, 1492 ("States retain their sovereign immunity from private suits brought in the courts of other States."). Alabama's Constitution expressly provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. Since there is no clear indication that Alabama has consented to be haled into North Carolina's courts, this Court violates the Constitution of the United States by subjecting Alabama to its jurisdiction.

### 2. *North Carolina law strictly construes waiver.*

Furthermore, under North Carolina law, when a statute grants a State entity

the power to "sue and be sued" that power "standing alone, does not necessarily act as a waiver of immunity." *Evans ex rel. Horton v. Hous. Auth. of Raleigh*, 359 N.C. 50, 56 (2004); *accord College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 676 (1999) ("[A] state does not . . . consent to suit in federal court merely by stating its intention to 'sue and be sued.' "). This interpretation is predicated on the principle that "[w]aiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 537–38 (1983); *see also Orange County v. Heath*, 282 N.C. 292, 296 (1972) ("The concept of sovereign immunity is so firmly established that it should not and cannot be waived by indirection or by procedural rule. Any such change should be by plain, unmistakable mandate of the lawmaking body."); *accord Petty v. Tenn.-Mo. Bridge Comm'n*, 359 U.S. 275, 276 (1959) ("The conclusion that there has been a waiver of immunity will not be lightly inferred."). Accordingly, by "strictly construing" statutes passed by the General Assembly enabling a sovereign entity to "sue and be sued" and refusing to "lightly infer" a waiver of immunity, North Carolina courts have repeatedly held that such language alone does not waive a sovereign entity's immunity. *Evans ex rel. Horton*, 359 N.C. at 56–57; *Guthrie*, 307 N.C. at 537–38; *Jones v. Pitt Cnty. Mem'l Hosp., Inc.*, 104 N.C. App. 613, 616–17 (1991); *Truesdale v. Univ. of N.C.*, 91 N.C. App. 186, 192 (1988), *overruled in part on other grounds by*

*Corum v. Univ. of N.C.*, 330 N.C. 761, 771 n.2 (1992). Plaintiff points to no North Carolina cases holding otherwise.

¶ 57        Plaintiff argues that *Georgia v. City of Chattanooga*, an eminent domain case, should control the sovereign immunity analysis in this case. 264 U.S. 472 (1924). However, *City of Chattanooga*, decided long before *Hyatt III*, addresses property issues, not an intentional tort action seeking money from a state's treasury, as in the present case. *See id.* at 478–80. Also, by my reading of *Hyatt III*, the Supreme Court did not address the distinction between commercial and governmental activity. However, this door may have been left open by the Supreme Court.

¶ 58        Likewise, *Thacker v. Tennessee Valley Authority* is also distinguishable. 139 S. Ct. 1435 (2019). *Thacker* interpreted the *United States Code* to determine whether Congress, by statute, waived sovereign immunity when it established the Tennessee Valley Authority. *Id.* at 1438. In *Thacker*, the Court analyzed how federal law, not state law, views a statutory sue and be sued clause. *Id.* at 1438–39. Additionally, the Tennessee Valley Authority is a federally created agency, not a sovereign state. *Id.* at 1438; 16 U.S.C. § 831.

¶ 59        It is fundamental to our federal system that "[i]n the interpretation of the Constitution of the United States, the Supreme Court of the United States is the final arbiter," and "any provision of the Constitution or statutes of North Carolina in conflict therewith must be deemed invalid." *Constantian v. Anson County*, 244 N.C.

221, 229 (1956); *see also* U.S. Const. arts. III, VI. Alabama's immunity from suit is predicated on the United States Constitution. *Hyatt III*, 139 S. Ct. at 1498. ("Interstate sovereign immunity is . . . integral to the structure of the Constitution.").

¶ 60    As a result, this Court cannot unilaterally impose a waiver of sovereign immunity on Alabama. Rather, Alabama must consent to be haled into North Carolina courts. While North Carolina's sovereign immunity from suits in this State may be judge-made law, *Corum*, 330 N.C. at 786, according to *Hyatt III*, Alabama's immunity from suit in this State is based on the United States Constitution itself.

## IV.    Conclusion

¶ 61    The United States Supreme Court has held that the United States Constitution renders Alabama immune from suits by private parties in this State unless Alabama consents to waive its immunity. *Hyatt III*, 139 S. Ct. at 1490. Plaintiff has presented no persuasive arguments that this case somehow escapes that rule. Moreover, there is no clear indication that Alabama has waived its immunity. Therefore, to hold that Alabama has waived its immunity, through reasoning that is attenuated at best and certainly does not constitute a "plain, unmistakable mandate of the lawmaking body," *Heath*, 282 N.C. at 296, violates both the United States Constitution and North Carolina's own standard for waiver of sovereign immunity. Accordingly, I respectfully dissent.

Chief Justice NEWBY joins in this dissenting opinion.