IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-591

Filed 7 May 2024

North Carolina Industrial Commission, I.C. No. TA-25621

KELVIN J. JONES, Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, Defendant.

Appeal by Defendant and cross-appeal by Plaintiff from Decision and Order entered 4 April 2023 by the North Carolina Industrial Commission. Heard in the Court of Appeals 12 February 2024.

> *Fidelity Law Group, by John B. Riordan, for Plaintiff-Appellee/Cross-Appellant.*
>
> *Attorney General Joshua H. Stein, by Assistant Attorneys General C. Douglas Green and Gregory L. Rouse, II, for Defendant-Appellant/Cross-Appellee.*

COLLINS, Judge.

The North Carolina Department of Public Safety ("Defendant") appeals from a Decision and Order entered by the North Carolina Industrial Commission awarding Kelvin Jones ("Plaintiff"), a former inmate at Maury Correctional Institution, damages for injuries he sustained from being assaulted by another inmate. Defendant argues that "[t]he Industrial Commission erred when it concluded that Defendant had notice and should have anticipated that a violent attack on Plaintiff was likely to occur." (capitalization altered). Plaintiff cross appeals, arguing that

certain findings of fact were erroneous. For the reasons stated below, we hold that the Commission did not err by concluding that Defendant "had notice, and reasonably should have anticipated, that a violent interaction between Plaintiff and [his assailant] was likely to occur." Accordingly, we affirm the Decision and Order. However, because Plaintiff's notice of appeal was untimely, we dismiss his cross-appeal.

## I.  Background

Plaintiff was an inmate in the Blue Unit at Maury Correctional Institution. The Blue Unit consists of six cell blocks, which are divided into two sides and connected by a hallway. There is a sliding door at the end of the hallway that allows access to a circular area, and there is a control booth within the circular area that operates the sliding door. Maury Correctional Institution's policy was to assign two officers to each side of the Blue Unit, except during mealtimes when one officer would monitor the cell blocks while the other officer would supervise the dining hall or hallway. A third officer would be assigned to the control booth and was required to remain in the control booth at all times.

On 24 May 2015, Officer Chiara Booker was assigned to the side of the Blue Unit where Plaintiff was held. Before dinner, Booker overheard Plaintiff and another inmate, Paul Thorton, speaking to each other in raised voices. After Plaintiff had spoken to a third inmate, Thorton appeared behind Plaintiff and said, "You wonder why I'm standing behind you. That's my brother. Anything go on with him, I'm

involved." Plaintiff responded, "I don't f[**]k with you. Why you bothering me? Man, I don't have no dealings with you, period."

After this verbal altercation, Plaintiff and Thorton left the cell block to go to the dining hall. Although Booker did not overhear any specific threats, she had "a bad feeling that something [was] gonna happen[.]" Booker reported the verbal altercation to her supervisor, Sergeant Jocilyn Pryor, and requested additional officers to her side of the Blue Unit due to the tension between Plaintiff and Thorton. Pryor did not further investigate Booker's report, did not separate Plaintiff and Thorton, and did not assign additional officers to the area. Booker also approached the officer assigned to the control booth that day and asked him to switch positions with her because she "had not seen a situation like that occur or anything," and "it was just a lot of tension and [she] didn't want to be the lone female in the middle of two men in a[n] altercation[.]" The officer did not do so.

As Plaintiff and Thorton were returning to the cell block from the dining hall, Booker saw Thorton strike Plaintiff in the face with a "homemade shank." Plaintiff turned around and began running into the hallway as Thorton chased him. Booker attempted to call for backup and pull out her pepper spray but fell to the ground in the process.

When Plaintiff and Thorton ran into the hallway, Officer Shaneka Hyman approached and instructed them to stop; however, Thorton continued to chase Plaintiff. Plaintiff fell to the ground, and Thorton struck him three or four times in

the head with the shank. Hyman sprayed Thorton with pepper spray; Thorton struck Plaintiff once more before returning to the cell block. Plaintiff was taken to the hospital and treated for stab wounds to his forehead and left cheek, and positional vertigo.

Plaintiff filed a claim for damages under the Tort Claims Act. After a hearing, the deputy commissioner entered a decision and order denying Plaintiff's claim. Plaintiff appealed to the Full Commission, and the Commission entered a Decision and Order on 4 April 2023 concluding that Plaintiff had proven all the essential elements of negligence and awarding Plaintiff $15,000 in damages.

Defendant appealed to this Court, and Plaintiff cross appealed.

## II. Discussion

### A. Defendant's Appeal

Defendant argues that "[t]he Industrial Commission erred when it concluded that Defendant had notice and should have anticipated that a violent attack on Plaintiff was likely to occur." (capitalization altered). Although Defendant frames this issue as a challenge to a conclusion of law, the arguments laid out in its brief effectively challenge the Commission's findings of fact as well as its conclusion that Defendant had notice and should have anticipated that a violent attack on Plaintiff was likely to occur. Accordingly, we will address both.

"[T]he findings of fact of the Commission shall be conclusive if there is any competent evidence to support them." N.C. Gen. Stat. § 143-293 (2023). "Appellate

review is limited to two questions of law: (1) whether there was any competent evidence before the Commission to support its findings of fact; and (2) whether the findings of fact of the Commission justify its legal conclusion and decision." *Taylor v. N.C. Dep't of Corr.*, 88 N.C. App. 446, 448, 363 S.E.2d 868, 869 (1988) (citation omitted). Unchallenged findings of fact are binding on appeal. *Gentry v. N.C. Dep't of Health & Hum. Servs.*, 242 N.C. App. 424, 426, 775 S.E.2d 878, 880 (2015). Conclusions of law are reviewed de novo. *Nunn v. N.C. Dep't of Pub. Safety*, 227 N.C. App. 95, 98, 741 S.E.2d 481, 483 (2013).

The Tort Claims Act permits recovery if the plaintiff can show that he sustained an injury that was proximately caused by a negligent act of a named State employee who was acting within the course and scope of his employment. N.C. Gen. Stat. § 143-291(a) (2023). "[T]he Tort Claims Act . . . waive[s] the sovereign immunity of the State in those instances in which injury is caused by the negligence of a State employee and the injured person is not guilty of contributory negligence, giving the injured party the same right to sue as any other litigant." *Williams v. N.C. Dep't of Just.*, 273 N.C. App. 209, 217, 848 S.E.2d 231, 238 (2020) (quotation marks and citation omitted). "Since the Tort Claims Act is in derogation of sovereign immunity it must be strictly construed, and its terms must be strictly adhered to." *Id.* (citations omitted).

"Actions to recover for the negligence of a State employee under the Tort Claims Act are guided by the same principles that are applicable to other civil causes

of action." *Simmons v. N.C. Dep't of Transp.*, 128 N.C. App. 402, 406, 496 S.E.2d 790, 793 (1998) (citation omitted). To recover upon a claim for negligence under the Tort Claims Act, a plaintiff must prove that (1) defendant owed plaintiff a duty of care; (2) the actions or failure to act by the named employees of defendant constituted a breach of duty; (3) the breach was the actual and proximate cause of the injury; and (4) plaintiff suffered damages as a result. *Bryson v. N.C. Dep't of Corr.*, 169 N.C. App. 252, 253, 610 S.E.2d 388, 389 (2005).

"A duty is defined as an obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Davis v. N.C. Dep't of Hum. Res.*, 121 N.C. App. 105, 112, 465 S.E.2d 2, 6 (1995) (quotation marks and citation omitted). "A breach of the duty occurs when the person fails to conform to the standard required." *Id.* (quotation marks and citation omitted). The Department of Public Safety "is not an insurer of the safety of every inmate and will not be found liable for negligence every time one inmate assaults another." *Taylor*, 88 N.C. App. at 452, 363 S.E.2d at 871. However, the Department of Public Safety does owe a "duty of reasonable care" to protect inmates "from reasonably foreseeable harm." *Id.* at 451, 363 S.E.2d at 871.

Here, the Commission made the following unchallenged findings of fact:

> 6. While performing rounds on E Cellblock before dinner on 24 May 2015, Ms. Booker heard Plaintiff and Mr. Thorton speaking in raised voices. According to Plaintiff, Mr. Thorton appeared behind Plaintiff while walking to his cell after Plaintiff had spoken with another inmate. Mr.

Thorton told Plaintiff that the other inmate Plaintiff had spoken with was Mr. Thorton's "brother," which Plaintiff believed indicated that Mr. Thorton and the other inmate were members of the same gang. As a result, Plaintiff told Mr. Thorton that Plaintiff and Mr. Thorton should stay out of each other's business. After the verbal altercation, Plaintiff and Mr. Thorton left the cellblock to go to the dining hall. Although Ms. Booker did not overhear any specific threats of violence during the verbal exchange between Plaintiff and Mr. Thorton, she had a "bad feeling that something [was] go[ing] to happen."

7. After overhearing the verbal exchange, Ms. Booker approached her supervisor, Sergeant Pryor, regarding her concerns. Specifically, Ms. Booker requested that backup be assigned to her area due to the tension between Plaintiff and Mr. Thorton. Sergeant Pryor took no action following the conversation with Ms. Booker, as she did not assign an additional officer, attempt to speak with Plaintiff or Mr. Thorton, or order that Plaintiff and Mr. Thorton be detained or separated.

As these findings are unchallenged, they are binding on appeal. *Gentry*, 242 N.C. App. at 426, 775 S.E.2d at 880. Nonetheless, these findings are supported by competent evidence. Booker testified to the following: Plaintiff and Thorton engaged in a "really loud" verbal altercation, and she had "a bad feeling that something [was] gonna happen[.]" Booker went to her supervisor, Pryor, and spoke to her "directly" about the altercation. Booker specifically requested additional officers to her side of the Blue Unit "[b]ecause [she] was gonna need some help just in case something happened." Pryor did not further investigate Booker's report, did not separate Plaintiff and Thorton, and did not assign additional officers to the area.

Defendant challenges the italicized portions of the following findings of fact:

7

12. Captain Brandon Connor—a lieutenant at [Maury Correctional Institution] was not present at the time of the assault but provided testimony regarding [Maury Correctional Institution's] policies and procedures. . . . According to Captain Connor, if one of his subordinates came to him indicating that they believed a credible threat had been made, he would "listen to [them] and go from there and make a determination," including personally looking into the matter. However, Captain Connor indicated that although he believed a superior officer should personally look into their subordinates' assertions that they believed an assault may occur, Sergeant Pryor did not violate [Maury Correctional Institution's] policies by taking no action after Ms. Booker reported her concerns. . . .

. . . .

15. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that *Defendant's staff were on notice that a violent altercation between Plaintiff and Mr. [Thorton] was likely to occur.* Specifically, Ms. Booker overheard a heated conversation between Plaintiff and Mr. Thorton, which she believed was likely to result in additional confrontation between the two. Ms. Booker's concerns were reported to her supervisor, at which time Ms. Booker requested additional staff to deal with a potential conflict.

16. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that *although Defendant was on notice of the likelihood of a violent altercation,* Defendant took no actions to prevent such an altercation. Defendant, including through Sergeant Pryor, took no steps to separate Plaintiff and Mr. Thorton or to further investigate the situation, even though such action could have been taken between the time of the argument before dinner and the assault after dinner. The Full Commission finds Defendant's failure to take any action was a failure to safeguard Plaintiff from reasonably anticipated danger. The Full Commission assigns no weight to Captain Connor's opinion that Sergeant Pryor's

failure to take any action was reasonable, as it was his opinion was contradicted by his testimony that superior officers should personally investigate concerns raised by subordinates.

The unchallenged portions of these findings—including that "Defendant's failure to take any action was a failure to safeguard Plaintiff from reasonably anticipated danger"—are binding on appeal. *Gentry*, 242 N.C. App. at 426, 775 S.E.2d at 880. The challenged portions of these findings are supported by Findings of Fact 6 and 7 and the evidence supporting those findings. Booker also testified that she told the officer assigned to the control booth "to pay attention and look at what's going on because [she] just didn't feel right, like it just – [she] felt like it was a lot of tension." Booker asked that officer to switch positions with her because she "had not seen a situation like that occur or anything," and "didn't want to be the lone female in the middle of two men in a[n] altercation[,]" but the officer did not do so. As the challenged portions of Findings of Fact 15 and 16 that Defendant was on notice of the likelihood of a violent altercation are supported by competent evidence, those findings are binding on appeal.

Defendant specifically objects to the Commission giving no weight to Captain Connor's opinion that Pryor's failure to take action was reasonable. However, "[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Wise v. Alcoa, Inc.*, 231 N.C. App. 159, 162, 752 S.E.2d 172, 174 (2013) (quotation marks and citation omitted). When asked what he would do if

a subordinate officer "were to come to [him] and say that they have perceived what they believe to be a credible threat, that something bad may happen involving particular or specific inmates," Connor testified that he "would listen to 'em and go from there and make a determination." Connor further testified:

> [PLAINTIFF]. Would you further investigate the issue to determine if further action needs to be taken?
>
> [CONNOR]. If it needs to be, yes.
>
> [PLAINTIFF]. Okay. And would you, as a result of that, would you at least confirm whether the officer's request for backup is justified?
>
> [CONNOR]. Yes.
>
> [PLAINTIFF]. And would you personally see that the matter is looked into to assess whether further action needs to be taken?
>
> [CONNOR]. Yes.

Despite this testimony, Connor also testified that Pryor's failure to further investigate Booker's report, separate Plaintiff and Thorton, or assign additional officers to the area conformed with Maury Correctional Institution's policies and procedures. The Commission found that Connor's contradictory testimony was not credible and assigned no weight to it, and "[i]t is not the role of this Court to make *de novo* determinations concerning the credibility to be given to testimony, or the weight to be given to testimony." *Id.* at 164, 752 S.E.2d at 175.

Defendant next challenges the Commission's conclusion of law that "Defendant had notice, and reasonably should have anticipated, that a violent interaction between Plaintiff and Mr. Thorton was likely to occur." Defendant distinguishes the

facts in the present case with those in *Taylor*, arguing that "[t]he Industrial Commission erred in relying upon *Taylor* to draw its conclusions."

In *Taylor*, the plaintiff was placed into a cell with an inmate who was associated with two other inmates with whom the plaintiff had fought. 88 N.C. App. at 448, 363 S.E.2d at 869. The plaintiff asked the officer not to place him in the cell, but the officer refused. *Id.* The plaintiff was physically and sexually assaulted for approximately an hour following his placement in the cell. *Id.* The noise level on the cell block was above average because the plaintiff was "hollering for the [officer]" and other inmates were "boosting" or "agitating" the assailant. *Id.* at 450, 363 S.E.2d at 870. The officer assigned to the cell block failed to investigate the excessive noise level and failed to make his normal rounds during this time. *Id.* at 449, 363 S.E.2d at 870. This Court held that the "defendant had a duty of reasonable care to protect the plaintiff from reasonably foreseeable harm[,]" and that "the defendant was negligent in failing to exercise proper care in this case." *Id.* at 451, 363 S.E.2d at 871.

While the facts supporting the Commission's finding in *Taylor* that the defendant was on notice that the plaintiff was in danger are perhaps more cogent than the facts here, *Taylor* does not preclude a finding and conclusion in this case that Defendant had notice, and reasonably should have anticipated, that a violent interaction between Plaintiff and Mr. Thorton was likely to occur.

The Commission found as fact that Defendant was put on notice that a violent altercation was likely to occur; Defendant failed to heed that warning; and Defendant

took no steps to further investigate the situation or to prevent such altercation. "Thus, while we recognize that the [Department of Public Safety] is not an insurer of the safety of every inmate and will not be found liable for negligence every time one inmate assaults another, the evidence below supported the Commission's findings and conclusions of negligence in this particular case." *Taylor*, 88 N.C. App. at 451-52, 363 S.E.2d at 871. Accordingly, the Commission did not err by awarding Plaintiff damages for the injuries he sustained from the assault.

**B. Plaintiff's Appeal**

Plaintiff argues that the Commission erred by finding that Booker acted reasonably in response to the assault and that he failed to establish that Defendant had insufficient personnel assigned to the area in which the assault occurred. We first consider whether we have jurisdiction to consider Plaintiff's appeal.

Rule 18 of the North Carolina Rules of Appellate Procedure governs "[t]he times and methods for taking appeals from an administrative tribunal . . . unless the General Statutes provide otherwise, in which case the General Statutes shall control." N.C. R. App. P. 18(b)(1). N.C. Gen. Stat. § 143-293 governs appeals under the Tort Claims Act and provides, "Either the claimant or the State may, within 30 days after receipt of the decision and order of the full Commission, to be sent by registered, certified, or electronic mail, but not thereafter, appeal from the decision of the Commission to the Court of Appeals." N.C. Gen. Stat. § 143-293.

Here, the Commission entered its Decision and Order on 4 April 2023. Plaintiff

12

filed his notice of appeal on 12 May 2023, after the thirty-day period had expired. Although the statute provides that a party may appeal within thirty days after *receipt* of the decision and order, there is nothing in the record indicating that Plaintiff received the Decision and Order later than 4 April 2023. *See Goins v. Sanford Furniture Co.*, 105 N.C. App. 244, 245, 412 S.E.2d 172, 173 (1992) (dismissing appeal as untimely where "[t]he record . . . [did] not indicate whether notice of the award was mailed" and therefore "the appellant was required to file notice within thirty days from the date of the award").

At oral argument, Plaintiff argued that under N.C. R. App. P. 3(c), he had ten days from when Defendant filed and served its notice of appeal to file his notice of appeal. However, an appeal from an administrative agency is governed by N.C. R. App. P. 18, not N.C. R. App. P. 3. Pursuant to N.C. R. App. P. 18(b)(1), the timeliness of Plaintiff's appeal is governed by N.C. Gen. Stat. § 143-293. Under N.C. Gen. Stat. § 143-293, Plaintiff's notice of appeal was untimely because it was filed more than thirty days after receipt of the Decision and Order. *See Strezinski v. City of Greensboro*, 187 N.C. App. 703, 710, 654 S.E.2d 263, 268 (2007) (dismissing cross-appeal as untimely because the timeliness of defendant's appeal was governed by N.C. Gen. Stat. § 97-86, not N.C. R. App. P. 3, as it was an appeal from an administrative agency).

Because Plaintiff's notice of appeal was untimely, this Court is without jurisdiction to consider his appeal.

13

## III.    Conclusion

The Commission did not err by concluding that Defendant "had notice, and reasonably should have anticipated, that a violent interaction between Plaintiff and Mr. Thorton was likely to occur." Accordingly, we affirm the Decision and Order. However, because Plaintiff's notice of appeal was untimely, we dismiss his cross-appeal.

AFFIRMED IN PART; DISMISSED IN PART.

Judge CARPENTER concurs.

Judge TYSON concurs in part and dissents in part by separate opinion.

TYSON, Judge, concurring in part and dissenting in part.

I concur in the majority's opinion to dismiss Plaintiff's cross-appeal due to Plaintiff's untimely notice of appeal. "[T]he appellant was required to file notice within thirty days from the date of the award." *Goins v. Sanford Furniture Co.*, 105 N.C. App. 244, 245, 412 S.E.2d 172, 173 (1992); *see Strezinski v. City of Greensboro*, 187 N.C. App. 703, 710, 654 S.E.2d 263, 268 (2007) (dismissing cross-appeal as untimely because the timeliness of the defendant's appeal from an administrative agency was governed by N.C. Gen. Stat. § 97-86, not N.C. R. App. P. 3). Plaintiff's notice was filed more than thirty days after receipt of the Full Commission's Decision and Order. N.C. Gen. Stat. § 143-293 (2023); N.C. R. App. P. 18(b)(2).

## IV.    Standard of Review

"[T]he Tort Claims Act is in derogation of [North Carolina's] sovereign immunity[,] it must be strictly construed, and its terms must be strictly adhered to." *Williams v. N.C. Dep't of Justice*, 273 N.C. App. 209, 217, 848 S.E.2d 231, 238 (2020) (citation omitted); *see* N. C. Gen. Stat. § 143-291(a) (2023).

The majority's opinion improperly reviews: "Defendant's failure to take any action was a failure to safeguard Plaintiff from reasonably anticipated danger" as a finding of fact and concludes this "finding of fact" is binding on appeal. The labels "findings of fact" and "conclusions of law" of a lower tribunal in a written order do not determine the nature of our standard of appellate review. *See Peters v. Pennington*, 210 N.C. App. 1, 15, 707 S.E.2d 724, 735 (2011).

"[A]ny determination requiring the exercise of judgment, or the application of legal principles, is more properly classified a conclusion of law. Any determination reached through logical reasoning from the evidentiary facts is more properly classified a finding of fact." *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (internal citations and quotation marks omitted). This finding of fact is actually a conclusion of law and is properly reviewed *de novo* by this Court.

The Industrial Commission's conclusions of law are reviewed *de novo*. *Nunn v. N.C. Dep't of Pub. Safety*, 227 N.C. App. 95, 98, 741 S.E.2d 481, 483 (2013) (citation omitted).

### V.  Sovereign Immunity-Stare Tort Claims Act

Our Supreme Court has held, "[i]t has long been established that an action cannot be maintained against the State of North Carolina *or an agency thereof* unless it consents to be sued or upon its waiver of immunity, and that *this immunity is absolute and unqualified.*" *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983) (citations omitted) (emphasis in original).

The State Tort Claims Act is a specific and limited statutory waiver by the General Assembly of North Carolina's *"absolute and unqualified"* sovereign immunity. *Id.* The statute expressly limits cognizable and viable claims to those arising "as a result of the negligence of any . . . employee . . . of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, *if a private person*, would be liable

2

to the claimant in accordance with the laws of North Carolina." N.C. Gen. Stat. § 143-291(a) (2023) (emphasis supplied).

The General Assembly's inclusion of "if a private person would be liable" clause is a substantive statutory limiting requirement. *See Frazier v. Murray*, 135 N.C. App. 43, 48, 519 S.E.2d 525, 529 (1999) ("Tort liability for negligence attaches to the state and its agencies under the Tort Claims Act only where the State [], if a private person, would be liable to the claimant." (citation omitted)).

Our Supreme Court recently held and re-affirmed "the 'private person' language contained in N.C.G.S. § 143-291(a) imposes a substantive, rather than a procedural, limitation upon the types of claims that are cognizable under the State Tort Claims Act." *Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs.,* 383 N.C. 31, 52 881 S.E.2d 558, 574 (2022) (citation omitted).

The State, through the Department of Public Safety, "is not an insurer of the safety of every inmate and will not be found liable for negligence every time one inmate assaults another[.]" *Taylor v. N.C. Dept of Correction*, 88 N.C. App. 446, 452, 363 S.E.2d 868, 871 (1988). Plaintiff must prove duty, breach thereof, proximate causation, and damages. *Parker v. Town of Erwin*, 243 N.C. App. 84, 110, 776 S.E.2d 710, 729-30 (2015) (citation omitted); *see Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928).

The State correctly argues: "The Industrial Commission erred when it concluded that Defendant had notice and should have anticipated that a violent

attack on Plaintiff was likely to occur," when properly reviewed as a conclusion of law. I respectfully dissent.

## VI. Proximate Cause and Foreseeability

Any party asserting a negligence claim carries the burden to establish and prove duty, breach of duty, proximate cause, and damages, and absence of contributory negligence. Proximate cause is defined as "a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred," and that it could be reasonably foreseen and probable under the circumstances. *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 710, 365 S.E.2d 898, 901 (1988) (citation omitted).

"The criminal acts of a third party are generally considered unforeseeable and independent, intervening causes absolving a defendant of liability. . . , For this reason, the law does not generally impose a duty to prevent the criminal acts of a third party." *Bridges v. Parrish,* 366 N.C. 539, 742 S.E.2d 794 (2013) (citations omitted).

Competent evidence supports the Commission's findings and correct conclusions that both: (1) Officer Booker had acted reasonably in response to the arguments and threats and also during the assault; and, (2) Plaintiff had failed to establish Defendant had assigned insufficient personnel for the conditions and to the area in which the assault occurred. These findings and conclusions are unchallenged and binding upon appeal.

## VII.    Plaintiff's Contributory Negligence

"[T]he Tort Claims Act . . . waive[s] the sovereign immunity of the State in those instances in which injury is caused by the negligence of a State employee *and the injured person is not guilty of contributory negligence,* giving the injured party the same right to sue as any other litigant." *Williams,* 273 N.C. App. at 217, 848 S.E.2d at 238. (emphasis supplied)

While the State, by and through its employees, may owe a duty of reasonable care to protect non-contributory inmates from reasonably foreseeable harms, Plaintiff's negligence claim must be reviewed for alleged breach and proximate cause in light of Plaintiff's own participation, actions, and culpability as a bar to recovery.  The State may be liable for negligence, through a prison employee, when he or she has notice an unprovoked assault is likely to occur and fails to take proper precautions to safeguard the non-contributory prisoner, Plaintiff is also responsible for his actions in provoking and bringing the assault about and to show he "*is not guilty of contributory negligence.*"  *Id.* (emphasis supplied).  Plaintiff's undisputed participation and prolonged actions in arguing with and provoking Thornton, participating in and bringing about the assault and resulting injuries, is a contributory absolute bar and precludes any award in his favor. *Id.*

The Industrial Commission found and concluded Officer Booker had acted reasonably in response to the potential of an assault by reporting Plaintiff's and Thornton's behaviors she had observed, attempting to call for backup and pulling out

5

and and discharging her pepper spray, as Plaintiff and Thornton persisted in their illegal affray. Officer Shaneka Hyman was also present, approached and instructed the inmates to stop. When Plaintiff fell to the ground, Hyman also sprayed Thorton with pepper spray.

Plaintiff purports to argue on appeal that the Industrial Commission erred by finding that Officers Booker and Hyman had acted reasonably in response to the prospect of and during the assault. We all agree Plaintiff did not timely appeal and this Court lacks jurisdiction to address this argument. The Full Commission's finding and conclusion on this issue is binding on appeal.

Plaintiff also failed to timely appeal, and we also all agree this Court lacks jurisdiction to address the issue of whether State had assigned insufficient personnel for the conditions and to the area in which the assault occurred, Nonetheless, the majority's opinion erroneously asserts Officer Booker's conduct and actions and the adequate staffing levels are separate issues from whether Sergeant Pryor had notice that an assault was likely to occur, which is the unsupported basis for the Industrial Commission's award.

The Commission erred by concluding the State, as Defendant through his actions, "had notice, and reasonably should have anticipated, that a violent interaction between Plaintiff and Mr. Thorton was likely to occur. " The State, through its Department of Public Safety and its correctional facilities, "is not an insurer of the safety of every inmate and will not be found liable for negligence every

6

time one inmate assaults another." *Taylor*, 88 N.C. App. at 452, 363 S.E.2d at 871. The award is properly reversed.

## VIII.    Damages

The Industrial Commission failed to consider and factor  medical care and treatment Plaintiff received and expenses incurred by the State into its conclusion to award damages.  The Full Commission found, "Plaintiff has experienced physical and emotional pain and suffering, ongoing bouts of intermittent vertigo, and scarring on his forehead and cheek."  Based upon this finding, the Industrial Commission concluded, without setting forth any specificity or basis in support of its conclusion, "Plaintiff is entitled to a reasonable award of $15,000.00 for his injuries, pain and suffering, and scarring."

 Plaintiff testified concerning his pain and suffering and showed his scars at the hearing.  No competent medical evidence was admitted on the nature and extent, or prognosis of Plaintiff's injuries to support the conclusion of this specific award, which is solely based on Plaintiff's unsupported testimony.

## IX.    Conclusion

Plaintiff failed to show any breach of duty, proximate cause, or medical proof or enumeration of damages to support the Full Commission's conclusions underlying the award. The Full Commission also failed to consider Plaintiff's conduct, actions and role in contributing to and bringing about the assault and his resulting injuries, or whether his actions were consistent with the agency's and institution's rules and

policies as a guest of the State and its taxpayers.

No competent medical evidence supports the extent, prognosis of Plaintiff injuries and no consideration of Plaintiff's care and treatment at State expense was adjudicated to support the Full Commission's award. This award is erroneous and is properly reversed. I respectfully dissent.